[No. 57-40402-1. Division One. November 10, 1969.]
Panel 2

JOHN MYERS, *Appellant*, v. KITSAP PHYSICIANS SERVICE, *Respondent.*

*John A. Bishop* and *Gary A. Cunningham,* for appellant.

*Wallace & Fraser* and *Philip M. Best,* for respondent.

REVIEW GRANTED BY SUPREME COURT.

UTTER, J.—John Myers brought suit to recover compensation for treatment allegedly owed by virtue of his health coverage contract with Kitsap Physicians Service. The court, sitting without a jury, dismissed the complaint and Myers has appealed.

The issue presented is whether expenses incurred after termination of a policy, as a result of an illness incurred prior to termination, are within the terms of the contract.

Kitsap Physicians Service is a health care service contractor as defined by RCW 48.44.010(3). Myers, through his employer, has been a member and paid fees for many years. After obtaining membership, Myers incurred a kidney disease which rendered his kidneys useless. Treatment of this condition necessitated use of an artificial kidney machine costing in excess of $13,000 a year.

When Myers first used the machine in 1960 he was covered by a contract containing no exclusion for kidney treatment. A dispute arose in 1966 and Physicians Service was ordered to pay for treatment up to the limits of the contract. During December, 1966, Physicians Service notified Myers and all other members it was modifying its basic health care contract. Modification increased compensation for some coverages but excluded kidney disorder treatments. Myers has accepted some benefits for other disorders under the new contract; however, Physicians Service has refused to pay for any kidney treatment since February 1, 1967. The material portions of the contract in force before the modification of 1966 provide:

> *Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract.* . . .

. . .

*Kitsap Medical will furnish during any certificate year all necessary medical, surgical and hospital services . . .*

A. Physicians' *Services*
Kitsap Medical will pay for necessary care by participating physicians in Kitsap County as *service benefits* and by other medical doctors as indemnity benefits as follows: . . .
B. In-Patient Hospital *Services*
Kitsap Medical will pay for necessary in-patient hospital services as follows: . . .

(Italics ours.) The full relevant text from which these excerpts have been extracted is set out below:[1]

---

[1]"In consideration of the statements contained in each application for coverage hereunder and payment in advance by the Group of monthly dues as set forth in each application, Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract. All payments and services are subject to each of the terms and conditions of this contract and any endorsement, rider, or amendment thereto.
". . .
"PART THREE: BENEFITS APPLICABLE TO MEMBERS—
GROUP HEALTH CARE SERVICE

"KITSAP MEDICAL will furnish during any certificate year all necessary medical, surgical and hospital services required by any member under this contract for any illness or injury to the extent stipulated below. . . .

"A. PHYSICIANS' SERVICES
"Kitsap Medical will pay for necessary care by participating physicians in Kitsap County as service benefits and by other medical doctors as indemnity benefits as follows:
"1. For necessary minor or major surgical care whether performed in or out of a hospital. . . .
"B. IN-PATIENT HOSPITAL SERVICES
"Kitsap Medical will pay for necessary in-patient hospital services as follows:
"1. Up to $17.50 per day for board, room and general nursing care.
"2. Seventy-five per cent (75%) of the reasonable cost of all other hospital services will be paid during available benefit days. . . .
". . .
"N. TERM, MODIFICATION AND TERMINATION
"This contract shall remain in effect from . . . and it shall be automatically renewed from year to year unless the Group gives to Kitsap Medical, or Kitsap Medical gives to the Group, thirty (30) days'

The contract, by its terms, was at most a contract for 12 months, renewable at the end of that period for another year with the consent of both parties. The language could arguably be interpreted to provide for only a month-to-month contract.

Myers does not contend notice of expiration of the old contract was untimely.

 Survival of the obligation to pay for treatment of an accident or illness which occurs while the contract is in force, following the termination of the contract, depends upon the nature of the insured event. *Accident* coverage extends to subsequent medical expenses. This is premised on the theory that all claims originate under an accident policy at the time the compensable accident occurs. *Intercoast Mut. Life Ins. Co. v. Andersen,* 75 Nev. 457, 345 P.2d, 762, 75 A.L.R.2d 870 (1959), *Maryland Cas. Co. v. Thomas,* 289, S.W.2d 652, (Tex. Civ. App. 1956).

Where the contract is for services performed, while the policy is in force, as distinguished from coverage for an accident or injuries received during the term, the court has limited liability to those expenses incurred while the policy was in force. *Bartulis v. Metropolitan Life Ins. Co.,* 72 Ill. App. 2d 267, 218 N.E.2d 225, (1966), *Lundquist v. Illinois Life & Accident Ins. Co.,* 24 Ill. App. 2d 316, 164 N.E.2d 293 (1960).

 The contract in this case provides the insured event is the rendition of services during the covered period. The material portions of the contract which have already been set out all emphasize the coverage is for *services* rendered. Both parties agree any ambiguity in the contract is to be given the construction most favorable to the insured. The contract, however, must be read as a whole and an ambigu-

---

written notice prior to the anniversary date, of its election not to renew this contract.

"Kitsap Medical may, upon thirty (30) days' written notice, modify, or adjust either the benefits or dues rates provided herein. However, in such event the Group shall have the right to terminate this contract by giving fifteen (15) days' written notice to Kitsap Medical prior to the effective date of such change."

ity will not be read into the contract. *Truck Ins. Exch. v. Rohde,* 49 Wn.2d 465, 303 P.2d 659 (1956).

This court does not agree with Myers' contention that liability attached when the injury or sickness occurred. The unambiguous language of the policy establishes liability only for *services* required during any certificate year. The question presented in the *Bartulis* case, 72 Ill. App. 2d at 269, was:

> whether expenses incurred after termination as a result of injuries sustained prior to termination are within the terms of the contract, . . .

The court held the language of the policy provided only for confinement as a patient in a hospital while the policy was in force and surgery performed while the policy was in force and concluded:

> We recognize the rule that insurance contracts are construed in favor of the insured, but construction does not degenerate into a perversion of plain language to create an ambiguity where none exists or to father a contract obligation where none is stated or reasonably implied. . . . Nor does either justice or public policy compel a different result.

The reasoning and holding of *Bartulis* is persuasive to us.

We are not unmindful of Myers' tragic circumstances but we do not know of a public policy argument that compels a different result. Myers chose coverage, in a field where there is substantial competition, which provided for services rendered only during the certificate year.

To now rewrite a contract to provide a result not called for by the clear language of the policy would not do justice to the other participants in this nonprofit group insurance plan. The Physicians Service must be able to base its rates and establish its reserves within the underwriting framework established by the contract.

The judgment of the trial court is affirmed.

HOROWITZ, A. C. J., and STAFFORD, J., concur.

---

Petition for rehearing denied December 15, 1969.