ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,

v.

UNITED STATES FIRE INSURANCE COMPANY, Appellee.

No. 80–2522.

United States Court of Appeals, Third Circuit.

Argued June 8, 1981.

Decided July 30, 1981.

Richard R. Galli (argued), T. E. Byrne, Krusen, Evans & Byrne, Philadelphia, Pa., for appellant.

Jerome E. Marks (argued), Deasey, Scanlan & Bender, Ltd., Philadelphia, Pa., for appellee.

Before ALDISERT, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The issue in this appeal is whether a claim against the insured for slander comes within an insurance policy endorsement that provides coverage for professional malpractice. The district court determined that language in the policy that extends protection only for bodily injury or property damage was applicable and, therefore, slander was not covered. We conclude that the definition of injury and damages contained in the malpractice endorsement, which is more favorable to the insured, controls and, accordingly, remand for the entry of a declaratory judgment establishing coverage.

St. Paul Insurance Company filed a complaint in the United States District Court for the Eastern District of Pennsylvania to obtain a declaratory judgment that the defendant, U. S. Fire Insurance Company, owes primary coverage for a claim of slander against their mutual insured, Dr. Robert A. Weisberg. After a bench trial, the district court entered judgment for the defendant.

The facts are largely undisputed. Dr. Weisberg was sued in state court by a professional associate, who alleged he had been slandered by the doctor during the course of a hospital board meeting. The St. Paul Insurance Company had issued an excess—"umbrella"—policy to Weisberg, and U. S. Fire had written the doctor's primary mal-

practice policy. St. Paul undertook defense of the case, but later tendered it to U. S. Fire, contending the latter was the primary carrier. St. Paul concedes that it owes coverage, but asserts it is excess only. U. S. Fire denies that its policy protects against slander, but admits that if coverage is due, it is primary. The construction of the U. S. Fire policy, therefore, is the narrow issue in this case.

An independent insurance agent sold the policy to Dr. Weisberg. It provides, by two endorsements attached to a general automobile liability policy, owners', landlords', and tenants' (OL&T) liability insurance and physicians' professional liability coverage. The premiums for each type of insurance are stated separately.

The OL&T liability insurance has "bodily injury liability" limits of $250,000–$500,000. This is shown on the face sheet of "Part Two," which recites, "This Declarations page and Coverage Part(s) with 'Policy Provisions-Part One' completes the below numbered POLICY . . . ." In the coverage part, the company agrees to

> "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. bodily injury or
>
> Coverage B. property damage
>
> to which this insurance applies . . . ."

In the general automobile liability policy, "Part One," under the heading "definitions," the policy provides, " '[D]amages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property . . . ."

The malpractice section of the policy, like the OL&T insurance, is also contained in a separate endorsement. Under its terms, the insured is described as an osteopathic physician, and the company agrees to pay all sums that he

> "shall become obligated to pay as damages because of
>
> Coverage M—Individual Professional Liability

> Injury arising out of the rendering of . . . professional services by the individual insured . . . as a member of a . . . professional board or committee of a hospital or professional society."

Later in the endorsement, the following appears:

"IV.   AMENDED DEFINITION

> When used in reference to this insurance 'damages' means all damages, including damages for death, which are payable because of injury to which this insurance applies."

The district court concluded that the dispositive issue was the construction of the term "injury" in the U. S. Fire policy. If it were found to "encompass all personal injury," and not just bodily injury, "plaintiff would prevail, because damages for slander are clearly personal injuries." In his findings, the district judge held that "[v]iewed as a whole, the terms of the defendant's policy are more consistent with a construction of the word 'injury' as meaning only 'bodily injury' than a construction of that word as meaning 'personal injury.'" The court therefore concluded that the defendant's policy was not intended to provide coverage "for personal injuries of the kind *sub judice*" and did not "provide coverage for the slander action in question." Having decided the "injury" question adversely to the plaintiff, the court did not meet the defendant's contention that Dr. Weisberg failed to provide it with proper notice of the claim against him.

On appeal, St. Paul asserts that the language in the defendant's policy is unambiguous and by its terms provides coverage for the slander suit. The defendant apparently contends that extrinsic evidence on the meaning of "injury" was properly admitted at the trial and that its policy does not provide coverage for slander.

In this diversity case, the parties agree that we should apply the law of Pennsylvania, where Dr. Weisberg practiced and the policies were issued and delivered. The applicable interpretative principles are familiar to us.

Pennsylvania holds that if the words of an insurance policy are clear and unambiguous, they are to be given their plain and ordinary meaning. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981); *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them. If the language is unambiguous, interpretation of the contract is a matter of law for the court. In the event that ambiguities do exist in the wording adopted by the insurance company, then the provisions must be resolved in favor of the insured. *Daburlos v. Commercial Insurance Co.*, 521 F.2d 18, 25–26 (3d Cir. 1975); *Sykes v. Nationwide Mutual Insurance Co.*, 413 Pa. 640, 643, 198 A.2d 844, 845 (1964); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 587, 152 A.2d 484, 487 (1959).

Additionally, rules of construction have developed to meet the situation where an endorsement has been added to the general policy. If there is a conflict between the terms of the endorsement and those in the body of the main policy, then the endorsement prevails, particularly when it favors the insured. *Lumbermens Mutual Casualty Co. v. Sutch*, 197 F.2d 79, 81–82 (3d Cir. 1952) (applying Pennsylvania law); *see Buntin v. Continental Insurance Co.*, 583 F.2d 1201, 1205–06 (3d Cir. 1978) (applying "general principles of insurance law as developed by courts throughout the nation," *id.* at 1204 n.3); *Farmers Insurance Exchange v. Ledesma*, 214 F.2d 495, 498 (10th Cir. 1954) (applying New Mexico law); 13A

J. Appleman & J. Appleman, Insurance Law and Practice § 7537 (1976 & Supp. 1980).

These rules have developed as a result of the common industry practice of using a basic policy form and then attaching endorsements to provide specialized forms of coverage. To the extent that the standard conditions in the underlying form are applicable, this procedure avoids unnecessary repetition. But when a specific form of insurance is provided by an endorsement tailored to meet the particular needs of the insured and the company, that language must be followed to carry out the intentions of the parties. Thus, it is clear that in this situation the malpractice insurance that Dr. Weisberg purchased is governed primarily by the terms of the endorsement which expands the scope of coverage, and only secondarily by the general terms of the automobile policy to which it is attached.[1]

The defendant has consistently refused to recognize this elementary rule of insurance policy construction. It argues that the malpractice insurance does not cover the slander claim because the basic policy defines "damages" as those arising from "bodily injury" or "property damage." However, it is not the definition of "damages" in the underlying automobile liability policy that controls, but that in the endorsement itself. The endorsement includes an "amended" definition of "damages" to broaden the insurance protection. The defendant's argument simply ignores the specific provision in the endorsement stating that " 'damages' means all damages" payable "because of injury to which this insurance applies."

---

1. The OL&T provisions are completely separate and not part of the professional liability insurance. By contrast, the general provisions of the underlying automobile form policy—"Part One"—do apply to the extent they are consistent with the OL&T and the professional liability endorsements. The copies of the policy submitted to the district court, and to this court, do not legibly reproduce the printing at the extreme top and bottom of each page. Furthermore, the copies do not indicate which pages appear on the reverse sides of the original documents, or which are part of the same unit. This makes it difficult to ascertain the correct order of the pages. The confusion could have been eliminated had the original of the policy been made an exhibit. If duplicates are to be submitted, they should be accurate and complete. *See* Fed.R.Evid. 1001(4) (duplicate is that "which accurately reproduces the original").

We find no ambiguity in this language despite defendant's protestations. Nothing in the endorsement limits its application to bodily injury, and we reject the defendant's contention that there is such a restriction. To read into the endorsement's broad definition of "damages" the more restrictive one in the basic policy form is simply to create an ambiguity where none exists. We therefore conclude that the district court erred in finding that the defendant's policy was limited to bodily injury. This issue should have been resolved in favor of the plaintiff, rather than the defendant.

The district court may not have considered the other contentions raised by the defendant. We see no need for a remand, however, because these issues turn on unambiguous policy language and the defendant's failure to satisfy its evidentiary burden. We have the appropriate documents before us and are therefore in as good a position as the district court to interpret the contractual provisions. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). There is, therefore, no necessity for a new trial in the district court.

One of the defenses raised by U. S. Fire was that the slander by Dr. Weisberg did not arise out of the rendering of professional services and, hence, was not covered by the professional liability endorsement. The district court did not discuss this contention in its findings or conclusions of law. Although the court's rejection of this argument might be implied from its determination that the definition of "injury" was the dispositive issue, we will review that contention, despite the fact the defendant has failed to support its position.[2]

■ The professional liability endorsement provides protection against "injury arising out of the rendering of . . . professional services . . . as a member of a . . . professional board or committee of a hospital or professional society." The defendant admitted that the allegedly slanderous statements were made by Dr. Weisberg during the course of a physicians' committee meeting seeking to upgrade services at the Barth Pavilion,[3] and it stipulated that the Barth Pavilion is a hospital. No evidence was produced by the defendant to establish the insured was acting outside his professional duties at the time the alleged remarks were made. Consequently, we find no basis in the record for concluding that Dr. Weisberg's conduct was outside the scope of the professional liability endorsement. The defendant's contention to the contrary, therefore, being that and only that, must be rejected for lack of proof.[4]

One other issue remains. In the district court the defendant contended that Dr. Weisberg failed to provide it with proper notification of the claim against him. As noted earlier, the district judge did not decide this question.

■ In his deposition Dr. Weisberg testified that when he received the complaint in the slander action, he turned it over to his insurance agent. The policy provides

2. The defendant chose to repeat its trial brief as its argument in this court. In some cases, or on some points, such a brief may suffice. Here, however, it fails to address important issues raised by the district court's opinion.

3. *See* Memorandum Law in Support of Defendant's Answer to Plaintiff's Motion for Summary Judgment at 1–2.

4. We note that at the trial the plaintiff introduced evidence that the Fidelity Casualty and Surety Bulletin, an authoritative publication in the insurance industry, had commented on the language used in the defendant's policy and others as well. The FC&S Bulletin said that the coverage was intended for

"intangible losses, such as humiliation, invasion of privacy, slander, et cetera.

With this language, the more detailed and complicated insuring clauses of many older non-standard contracts which often refers specifically to claims based upon undue familiarity, anesthesia, hallucinations, assault, slander, libel, counterclaims and suits for collections of fees, et cetera, aren't necessary."

It is significant that the defendant did not refute this commentary. Although this interpretation is not binding on us, we find that it is in accordance with our own views based upon independent examination of the policy language.

that notice of a claim is to be given to "the company or any of its authorized agents." We have scrutinized the complete record filed with this court and find no evidence that the insurance agent was not authorized to receive notice on behalf of the defendant. Having failed to produce any evidence that the insured failed to comply with this provision, the defendant cannot prevail on the point.

Having concluded that the defendant's policy provides primary coverage for Dr. Weisberg for the slander suit, we will vacate the judgment in favor of the defendant and remand the case to the district court with instructions to enter judgment in favor of the plaintiff.[5]

---

5. We note that coverage disputes of this nature may be submitted on a voluntary basis to experienced arbitrators under the auspices of the Board of Governors-Insurance Arbitration Forums. This forum offers the advantages of adjudication on an expedited and inexpensive basis by persons thoroughly skilled in policy interpretation. Although we can understand the desire of the insurance industry to refer novel questions of coverage to the courts to establish necessary precedents, routine disputes such as that involved here could be handled with dispatch by the arbitration procedure. We commend its utilization to the insurance bar.