HOUGHTON, Mary D., Appellee,

v.

**AMERICAN GUARANTY LIFE INSURANCE COMPANY, Appellant.**

No. 82–1148.

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1982.

Decided Nov. 3, 1982.

Thomas J. Speers (argued), McTighe, Weiss & Stewart, Norristown, Pa., for appellant.

James J. Oliver (argued), Wright, Manning & Sagendorph, Norristown, Pa., for appellee.

Before SEITZ, Chief Judge, ROSENN, Senior Circuit Judge, and GARTH, Circuit Judge.

### OPINION OF THE COURT

GARTH, Circuit Judge.

American Guaranty Life Insurance Company ("AGLIC"), appeals from an order which granted summary judgment for Mary D. Houghton. The district court held that the terms of the health insurance policy issued by AGLIC to Mary Houghton provided coverage for medical expenses which she incurred after the termination of the policy, where the expenses were the

result of the sickness which she suffered during the life of the policy. We affirm.

## I.

Mary Houghton, a Pennsylvania resident, in response to an AGLIC advertisement, applied for a health insurance policy. The policy was advertised as a "new Federal Medicare supplemental Major Medical insurance program that pays up to $250,-000.00 in benefits!" App. at 227a. After payment of the premium, AGLIC issued Houghton a "Medicare Booster" policy on January 1, 1979. The policy provided for Basic Medicare as well as Major Medical coverage. By the policy's terms, AGLIC contractually reserved the right to decline to renew the policy by giving Houghton thirty days' written notice. However, AGLIC could decline renewal but only if it also cancelled all the issued policies bearing the same form number in the insured's state. Houghton's policy, which became effective on January 1, 1979, was the only policy issued by AGLIC in Pennsylvania.[1]

In March 1979, Houghton suffered a stroke with resulting brain damage while she was hospitalized for a hip injury. On November 30, 1979, AGLIC sent Houghton a written notice of its decision not to renew her policy as of December 31, 1979. AGLIC paid Houghton for the stroke related expenses incurred by her up to the cancellation date of the policy, but refused to make any payments for such expenses incurred after that date.

Houghton thereupon instituted an action against AGLIC in the District Court for the Eastern District of Pennsylvania. She sought payments for her continuing stroke related post-cancellation medical expenses. AGLIC moved for summary judgment claiming among other things, that it had cancelled the policy in conformance with its terms. AGLIC contended that the policy only covered expenses *actually* incurred during the life of the policy and that it had met this contractual obligation by compen-

sating Houghton for her expenses incurred until the date the policy was cancelled.

Houghton filed a cross-motion for summary judgment. She argued that AGLIC was estopped from cancelling the policy because she was "lured" into buying the policy and had become an uninsurable risk after she had suffered her stroke. She also argued that the insurance policy provided coverage for all expenses incurred even after the cancellation of the policy, when the expenses resulted from a sickness which had occurred prior to the policy's cancellation. She asked the district court to reinstate the policy and to require AGLIC to pay all her claimed Allowable Expenses under the policy.

The district court denied AGLIC's motion but granted Houghton's cross-motion for summary judgment. In a memorandum opinion, it found that AGLIC had not used clear and unambiguous language in the policy to limit its liability only to medical expenses actually incurred by the insured during the term of the policy coverage. Therefore, it concluded "that the uncertainty in the policy with regard to the payment of medical expenses incurred after the policy had been cancelled but resulting from a physical injury incurred during the policy coverage period should be construed in favor of the insured." App. at 274a. Ruling in Houghton's favor, the district court ordered AGLIC to "pay the allowable expenses as provided under the insurance policy." App. at 276a. This appeal followed.

## II.

On appeal, AGLIC makes three arguments. Its primary argument is that the district court erred in finding the terms of the policy to be ambiguous regarding the risk that was insured. It claims that the plain language of the policy clearly establishes that only actual expenses incurred during the life of the policy were to be reimbursed, and therefore, the district court erred in finding that the insurance policy

---

**1.** AGLIC is not licensed to do business in Pennsylvania. AGLIC claimed in its Answer that the policy was erroneously issued to Houghton.

covered expenses incurred after the cancellation of the policy provided those expenses resulted from a pre-termination sickness.

AGLIC also argues, for the first time on appeal, that even if the district court correctly interpreted the policy in imposing liability on the insurer for certain post-termination expenses, it nevertheless erred in ordering the insurer to "pay the allowable expenses as provided under the insurance policy." App. at 276a. It contends that the court should not have granted final relief on a summary judgment motion, because there were material issues of fact as to the dollar amount and the period of time for which it was obligated to pay the Allowable Expenses.

Finally, it argues that the district court order is ambiguous as to the relief actually granted. It has asked us to modify the district court order granting judgment in favor of Houghton so that the policy is deemed to have been properly *terminated* rather than *reinstated.* We consider each argument in turn.

## A.

The principles are well settled regarding the interpretation of insurance policies under Pennsylvania law.[2] In interpreting an insurance policy, which is a contract, courts are required to determine the intent of the parties as disclosed by the language of the policy. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.,* 632 F.2d 1068, 1075 (3d Cir. 1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981) (citing *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974); *Lovering v. Erie Indemnity Co.,* 412 Pa. 551, 195 A.2d 365 (1963); *Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co.,* 583 F.2d 650, 652 (3d Cir. 1978)). If the language is clear and unambiguous, courts are to give effect to its plain and ordinary meaning. *St. Paul Fire & Marine Insur-*

ance Co. v. United States Fire Insurance Co., 655 F.2d 521, 524 (3d Cir. 1981); Eastern Associated Coal Corp., supra; Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Co., 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). However, because insurance policies are frequently considered to be contracts of adhesion, any ambiguity in the policy "*must* be construed against the insurer, and in a manner which is more favorable to coverage." *Buntin v. Continental Insurance Co.,* 583 F.2d 1201, 1207 (3d Cir. 1978) (emphasis in original). *See, e.g., Alexander & Alexander, Inc. v. Rose,* 671 F.2d 771, 777 (3d Cir. 1982); *St. Paul Fire & Marine Insurance Co., supra,* 655 F.2d at 524; *Daburlos v. Commercial Insurance Co. of Newark, New Jersey,* 521 F.2d 18, 25–26 (3d Cir. 1975); *Mohn, supra,* 458 Pa. at 586, 326 A.2d at 351; *Burne v. Franklin Life Insurance Co.,* 451 Pa. 218, 226, 301 A.2d 799, 804 (1973); *Penn-Air, Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 517, 269 A.2d 19, 22 (1970); *Cohen v. Erie Indemnity Co.,* 288 Pa.Super. 445, 448, 432 A.2d 596, 597 (1981). Nevertheless, the language of the policy may not be tortured to create ambiguities where none exist. *St. Paul Fire & Marine Insurance Co., supra,* 655 F.2d at 524; *Eastern Associated Coal, supra,* 632 F.2d at 1075; *Treasure Craft Jewelers, Inc., supra,* 583 F.2d at 652.

Thus, under Pennsylvania law, ambiguous terms of an insurance policy are construed against the insurer. This principle stems from Pennsylvania's concern that insurance companies, because of their superior bargaining position, should not be permitted to thwart the reasonable expectations of the consumer purchaser. *See Collister v. Nationwide Life Insurance Co.,* 479 Pa. 597, 388 A.2d 1346 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).

AGLIC argues that the principles of construction that apply to the interpretation of

2. The district court applied the substantive law of Pennsylvania in interpreting the "Medicare Booster" policy issued to Houghton by AGLIC. Since neither of the parties argues that the law of another state is applicable in this diversity action, and because the policy was issued in Pennsylvania to a Pennsylvania resident, our analysis too will be guided by Pennsylvania law.

an ambiguous contract are not relevant to this case because the language contained in the "Medicare Booster" policy which it sold to Houghton, clearly establishes that the coverage of the policy extended only to medical expenses ("Allowable Expenses") actually incurred during the term of the policy. In essence, AGLIC argues no ambiguity exists. Our review of the policy in question compels us to reject AGLIC's argument. We agree with the district court that the Houghton policy is not free from ambiguity.

1.

In support of its claim that the policy language unambiguously insures the payment of medical expenses which were incurred only during the term of the policy, AGLIC relies on the language contained in the Basic Medicare policy. That policy, under the section captioned "BENEFITS," reads: "When, as a result of injury or sickness, you require medical treatment resulting in Allowable Expense, we will pay you for such Allowable Expense as limited and described below." App. at 225a. AGLIC contends that when this provision for Allowable Expense is read together with the first sentence of the policy, which states: "AGLIC WILL PAY you the Insured for loss resulting from injury or sickness as limited and described in this policy," App. at 223a, the terms clearly establish that the risk AGLIC insured was to pay only those Allowable Expenses incurred during the term of the policy.

Examining the section captioned "BENEFITS," we find no express language which would require that the Allowable Expenses must occur during the term of the policy in order to warrant reinstatement. Allowable Expense is defined as: "those charges for all expenses allowable under Part A and Part B of Medicare but not payable by Medicare because of deductibles or coinsurance or because they exceed Medicare's maximums except for the following." App.

at 225a. Thereafter the policy lists six exceptions as follows:

Allowable Expense does *not* include

(a) Hospital expense beyond Medicare's maximum benefit period or lifetime reserve;

(b) Psychiatric hospital expense beyond Medicare's maximum benefit period or lifetime limit;

(c) Skilled nursing facility expense beyond Medicare's 100 day maximum during each benefit period;

(d) Out-patient psychiatric expense beyond Medicare's calendar year maximum;

(e) Charges by independently practicing physical therapist beyond Medicare's calendar year maximum; and

(f) Expenses incurred in excess of reasonable charges as determined by Medicare.

*Id.* at 225a.[3] It is clear that the exceptions listed do not restrict payments for Allowable Expense to only those expenses which were incurred during the term of the policy.

Therefore, nothing in the language of the "BENEFITS" section supports AGLIC's contention that the policy clearly manifests the intention of both parties to enter into a contract under which the insurer was obligated to pay the insured only Allowable Expenses actually incurred during the term of the policy. Indeed, the terms of the policy support just the opposite conclusion. When the definition of Allowable Expense is considered in light of the six exceptions which we have reproduced above, it appears that the six specified exceptions are the *only* limitations imposed on Houghton's insurance coverage. An insured could reasonably be led to believe that the policy insured the payment of certain medical expenses up to Medicare's maximum benefits. There is nothing which is disclosed in the language to indicate that the AGLIC may terminate the coverage without cause and absolve it-

---

**3.** The policy that was issued to Houghton had the following additional limitation: "[t]he Part B deductible amount unless you are actually hospitalized." App. at 8a. The policy addressed by the district court which had been furnished to it by AGLIC, contained only the six exceptions listed in the text. The parties make no issue of this difference in number of exceptions or with respect to their content.

self of liability at a time when the insured needs health coverage the most—after suffering a serious illness which results in prolonged and continuing medical treatment and expenses. As the district court noted, the benefits which appear to be provided by AGLIC under the policy "would be illusory if the insurer could pay the allowable expenses for a limited period of time and then exercise the right to refuse renewal despite the continuing medical expenses." App. at 272a.

## 2.

Moreover, our reading of the term "loss" as it is used in Houghton's policy enhances the ambiguity that exists in the contract regarding the nature of the risk which AGLIC insured. The word "loss" is nowhere defined in the policy. It is instead used in connection with the terms "injury" and "sickness." Injury is defined as "bodily harm due to an accident resulting in loss while this policy is in force except loss in the first six months due to a pre-existing condition." App. at 225a. Sickness is defined as: "ill health or disease resulting in loss while this policy is in force except loss in the first six months due to a pre-existing condition." *Id.* Thus, reading the terms of the policy as an integrated whole, we are struck by the same "semantic circuity" that the district court noted. App. at 273a. Under the terms of the policy, AGLIC has contracted to pay Houghton for *loss* resulting from injury or sickness. Yet, "injury" and "sickness" are themselves defined in terms of loss. Thus, the most crucial term in the policy, "loss," is left undefined.

Additionally, the subsidiary clause "while this policy is in force" which appears in both the "injury" and "sickness" definition could just as readily be construed as modifying the terms "sickness" or "injury" rather than the term "loss"—a construction urged upon us by AGLIC. If so interpreted, then benefits would be payable when an injury or sickness occurred at any time during the term of the policy with no limitation as to when such benefits would terminate.

Because the language of the policy is ambiguous [4] in this respect, we are bound to construe the language against AGLIC, the insurer which drafted the policy. *See Buntin, supra; Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Insurance Co.,* 385 Pa. 394, 123 A.2d 413 (1956); *Blocker v. Aetna Casualty & Surety Co.,* 232 Pa.Super. 111, 332 A.2d 476 (1975).

## 3.

To bolster its argument, AGLIC cites two non-Pennsylvania cases: *Bartulis v. Metropolitan Life Insurance Co.,* 72 Ill.App.2d 267, 218 N.E.2d 225 (1966) and *Myers v. Kitsap Physicians Service,* 1 Wash.App. 272, 460 P.2d 686 (1969), *rev'd,* 78 Wash.2d 286, 474 P.2d 109 (1970). Neither of these authorities supports AGLIC's position.

In *Bartulis,* the court determined that the medical insurance policy did not provide coverage for post termination medical expenses because the insurer had used "crystal clear" language to limit its liability to pre-termination medical expenses. The policy there provided:

\* \* \* That any Certificateholder while insured for Hospital Expense Insurance hereunder \* \* \* shall have become confined as a patient in a legally constituted hospital upon the recommendation and approval of a physician or surgeon legally licensed to practice medicine, as a result of any injury. \* \* \*

\* \* \* That any Certificateholder while insured for Surgical Operation Insurance hereunder \* \* \* shall have undergone

---

4. This ambiguity in the policy is not cured, despite AGLIC's claim to the contrary, by the policy term which provides for the payment of certain medical expenses arising from pre-existing conditions. The policy provides that AGLIC "will not reduce or deny a claim for loss that begins more than six months after your Issue Date because a disease or physical condition had existed before your Issue Date." App. at 224. That provision does not establish that the policy only covers loss resulting in an Allowable Expense during the term of the policy. Instead, this provision does no more than provide for payment for certain expenses resulting from a pre-existing condition as a collateral, *additional* benefit which is in no way intended to affect the benefits to be paid for losses resulting from an injury or sickness which occurred during the term of the policy.

any surgical operation specified in Section 9 hereof, as a result of any injury.

* * *

218 N.E.2d at 226.

The court, relying upon these two clauses and a provision that specifically entitled the policyholder to certain "Benefits after Cessation of Insurance" but which did not cover the insured's claim, held that a hospitalization incurred three months after the policy's cancellation was not covered under the policy terms.

In *Kitsap,* the insured, in 1960, had suffered a kidney ailment which required hemodialysis. At that time, he was covered by an insurance policy which contained no exclusions for kidney disorder treatments. The policy was subsequently modified, and the insurance company, relying on the modification which deleted coverage for kidney ailments, refused to pay for the insured's dialysis. The court of appeals, in affirming the trial court, construed the policy provisions in favor of Kitsap Medical, the insurer. It is that opinion which AGLIC has cited to us and on which AGLIC has relied.

AGLIC's reliance on the court of appeals opinion is misplaced, however, because on appeal the Washington Supreme Court, *en banc,* reversed the lower court. It held that the language of the original policy was ambiguous and susceptible to more than one reasonable interpretation and thus, was to be construed against the insurance company. *Myers v. Kitsap Physicians Service,* 78 Wash.2d 286, 474 P.2d 109 (1970) (*en banc*). Significantly, it also held that the insured's rights under the policy had become "vested" when he incurred his illness and therefore those rights could not be terminated by the subsequent modification of the policy. 474 P.2d at 111.

4.

The final provision on which AGLIC relies is a policy provision labeled "EXTENSION OF BENEFITS," which appears in the Major Medical portion of the policy issued to Houghton. As noted previously, Houghton, after she had replied to AGLIC's advertisement, was issued a combined policy which included both Basic and Major Supplemental Medical coverage. This provision reads:

> EXTENSION OF BENEFITS. If you have incurred *Acceptable Charges* for an injury or sickness before the termination date of this policy, we will continue to pay benefits for such injury or sickness for the balance of the calendar year or for the number of months this policy was in force, whichever is less.

App. at 9a. This provision, if given operative effect, would apparently limit the post-termination expenses which AGLIC would otherwise be obliged to pay. AGLIC so argued before us. However, this provision was not brought to the attention of the district court. Nor did AGLIC argue or rely upon this clause before the district court.

We can only surmise that the "EXTENSION OF BENEFITS" clause was not brought to the attention of the district court because AGLIC, in moving for summary judgment, for a reason that the record does not reveal, had provided the district court with a copy of its insurance policy which only contained the Basic Medicare Supplement policy. As a consequence, in making its arguments to the district court, AGLIC relied only on the language contained in the Basic Medicare policy. The "EXTENSION OF BENEFITS" clause is not a part of that policy.

■ In the absence of "exceptional circumstances, an issue not raised in the district court will not be heard on appeal." *Altman v. Altman,* 653 F.2d 755, 758 (3d Cir. 1981) (quoting *Franki Foundation Co. v. Alger-Rau & Associates, Inc.,* 513 F.2d 581, 586 (3d Cir. 1975)). *See also Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932–33 (3d Cir. 1976). We have recognized that exceptional circumstances exist "when the public interest requires that the issue be heard or when manifest injustice would result from the failure to consider the new issue." *Altman, supra,* 653 F.2d at 758. Here, AGLIC has not

demonstrated any exceptional circumstances which would require us to depart from our established rule. Indeed, no reason has been suggested why we should excuse AGLIC's failure to raise this issue before the district court. AGLIC drew the policy and therefore, cannot credibly claim unfamiliarity with its terms. Moreover, if this provision conclusively establishes AGLIC's interpretation of its policy, there is even less reason to excuse AGLIC's failure to call the district court's attention to it.[5]

### B.

We also reject AGLIC's argument that instead of granting final relief on a summary judgment motion, the district court should have held an evidentiary hearing to determine "how much and for how long the insurer was obligated to pay [the Allowable Expenses]." Appellant's brief at 12.

We agree with the district court's determination that there were no disputed material issues of fact. In moving for summary judgment, AGLIC had stated that there were no material issues of fact and that "it may be assumed that plaintiff [Mary Houghton] has incurred medical expense which could be 'allowable expenses' under the policy if it were still in effect." App. at 216a.

Houghton submitted affidavits of her treating physicians in support of her claim that her continued expenses resulted from the stroke she suffered in March 1979. AGLIC did not dispute those affidavits except for making a general demand for proof. App. at 265a. A mere demand for proof does not create a material issue of fact requiring the denial of a motion for summary judgment. *See, e.g., Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir. 1975)

("given the opportunity to respond to a movant's affidavits, an adverse party may not rest upon a mere cryptic and conclusionary allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial"); *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.,* 365 F.2d 742, 747 (3d Cir. 1966) (must present facts which indicates that material issues of fact exist); *Robin Construction Co. v. United States,* 345 F.2d 610, 613 (3d Cir. 1965) (cannot defeat a summary judgment motion by "mere formal denials or general allegations which do not show the facts in detail and with precision").

Moreover, AGLIC cannot assert the "EXTENSION OF BENEFITS" clause for the first time on appeal in order to create a material issue of fact as to the period of time for which it can be held responsible for making payments for post-termination Allowable Expenses incurred by Houghton. Having failed to urge this consideration before the district court, AGLIC cannot now be heard to complain.

In its order, the district court required AGLIC to "pay the allowable expenses as provided under the insurance policy," App. at 276a, but did not expressly state the maximum monetary amount for which AGLIC could be held contractually liable. Our examination of Houghton's policy reveals that AGLIC promised to pay up to $250,000.00 "Maximum Lifetime Benefit." App. at 10a. We hold, therefore, that AGLIC is liable for payment of Allowable Expenses as provided under its policy for Houghton's stroke-related medical expenses up to the amount of $250,000.00.

### C.

As its final argument, AGLIC contends that the district court order is unclear as to

5. Even if we were to overlook our established practice and were to consider the "EXTENSION OF BENEFITS" provision, we would still have serious reservations about giving effect to this clause. The clause as drawn and presented appears to be ambiguous and susceptible of misleading an insured. The caption, "EXTENSION OF BENEFITS," implies that benefits under the policy are being extended. In fact, however, under this clause, the policy coverage appears to be restricted. Moreover, if we were called upon to construe this clause, we would not be surprised if an insured argued that such a clause constitutes a limitation or restriction falling within the doctrine established in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 515–16, 327 A.2d 363, 365 (1974) (burden on insurance company to establish that an exclusion has been read and explained to the insured and that the insured understood it).

the relief actually granted. AGLIC claims that the district court held that AGLIC had properly terminated the policy by giving notice of non-renewal. Yet, AGLIC claims, despite the district court's holding that the policy term had not been renewed, it is now faced with an interpretation that the policy has been, in effect, reinstated. AGLIC therefore seeks a modification of the district court's order which would state that the policy was indeed terminated, and not reinstated.

The short answer to AGLIC's argument is that the district court, while holding that AGLIC took the necessary steps to decline renewal of the policy, nevertheless, held that AGLIC could not cancel its liability to Houghton for her post-termination medical expenses arising from her stroke. This conclusion is made crystal clear when the district court's order is read in light of the relief sought by Houghton in her motion for summary judgment (which was granted), and the discussion in the district court's memorandum opinion.

Houghton, in moving for summary judgment, asked that her policy be reinstated and that AGLIC be required to pay for all Allowable Expenses. The district court opinion makes it clear that in granting her motion for summary judgment, the policy was reinstated, but only for the limited purpose of establishing AGLIC's liability for Houghton's stroke-related medical expenses. As we read Houghton's Major Medical policy, AGLIC's liability will be limited to the $250,000.00 "Maximum Lifetime Benefit." [6]

### III.

The order of the district court dated February 3, 1982 which granted Houghton's motion for summary judgment will be affirmed.

---

**6.** In light of our disposition, we need not address the estoppel argument which Houghton has advanced.