Timothy SHISHKO

v.

STATE FARM INSURANCE COMPANY.

Civ. A. No. 82–0063.

United States District Court, E.D. Pennsylvania.

Dec. 21, 1982.

Thomas R. Kline, of Beasley, Hewson, Casey, Colleran & Erbstein & Thistle, Philadelphia, Pa., for plaintiff.

Louis E. Bricklin, of Bennett, Bricklin, Saltzburg & Fullem, Philadelphia, Pa., for defendant.

## MEMORANDUM

JOSEPH S. LORD, III, Senior District Judge.

### I.  Facts

On November 2, 1979, in Chester, Pennsylvania, plaintiff was struck by a car operated by defendant's insured, Gregory P. Schreder.  Plaintiff filed a claim under Schreder's Pennsylvania no-fault insurance policy with State Farm.  Defendant has admitted that plaintiff is covered by the policy and has paid the first $50,000 of plaintiff's medical expenses, but has refused to pay for any medical expenses incurred by the plaintiff exceeding $50,000.  The only question at issue is whether plaintiff is entitled to unlimited medical benefits under the policy.  Presently, plaintiff lives with his family in Plainview, New York, although at the time of the accident he was attending Widener College in Chester, Pennsylvania.

### II.  Procedural Setting

The procedural posture of this case defies normal description.  The case was scheduled for a non-jury trial on September 24, 1982.  On September 23, 1982, plaintiff filed a motion for summary judgment.  The next day at trial, I heard argument on whether Section 110(c) [1] of the Pennsylva-

---

1. § 1009.110 Motor vehicles in interstate travel

(c) Applicable law.—
  (1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs.  If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

nia No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.,* as incorporated into the insurance contract, requires New York's Comprehensive Automobile Insurance Reparations Act, 27 McKinney's C.L. N.Y. Insurance Law § 670 *et seq.,* to govern the medical benefits Mr. Shishko can recover. Both sides agreed that section 671(1) [2] of the New York statute, if applicable, would limit plaintiff's medical benefits to fifty thousand dollars. Defendant argued that if plaintiff were a New York domiciliary at the time of the accident the choice of law provision of the Pennsylvania act would require that section 671(1) of the New York act would apply. Plaintiff disagreed. He argued that the contract, not the statutes, governs and even if plaintiff were a New York domiciliary the contract clearly would provide unlimited medical benefits.

Both sides agreed that if Mr. Shishko were a Pennsylvania domiciliary on the date of the accident, the defendant would be liable for unlimited medical benefits. From the evidence produced at trial I have decided that plaintiff was a New York domiciliary on the date of the accident. Therefore, I must decide the more difficult question of whether the contract, as it incorporates the Pennsylvania act, provides unlimited medical benefits to a New York domiciliary.

Because I had decided that plaintiff was a New York domiciliary, on December 10, 1982, I heard reargument in light of *Swezey v. The Home Indemnity Company,* 691 F.2d 163 (3d Cir., 1982).

In this opinion, I will first set forth the findings of fact and conclusions of law I have reached after considering the domicile evidence presented on September 24, 1982. Next, by consent of the parties, I will treat the contract issue as an action for declaratory judgment.

### III. Domicile

■ At birth, a child acquires the domicile of his father. Restatement (Second) of Conflicts, § 14 (1971). Once the individual has reached the age of majority, he may change his domicile by voluntarily establishing a new residence "with a present intention to make it either his permanent home or his home for the indefinite future." *In re Estate of McKinley,* 461 Pa. 731, 734, 337 A.2d 851, 853 (1975). *See also Krasnov v. Dinan,* 465 F.2d 1298 (3d Cir.1972).[3]

■ Because a domicile continues until a new domicile is established, an individual asserting a change of domicile has the burden of proving both physical presence and an intent to remain indefinitely. Restatement (Second) of Conflicts, § 19 (1971), *Petition of Wagner,* 381 Pa. 107, 112 A.2d 352 (1955).

■ Mr. Shishko has not met this burden. Shishko's uncontroverted testimony that he lived in Chester, Pennsylvania while he attended Widener College satisfies the first requirement of domicile: he had taken up residence in Pennsylvania before the accident. He has not proven, however, that he had the intent to remain in Pennsylvania indefinitely. Besides the individual's assertion of an intent to remain, a court must consider objective factors, *Blue v. National Fuel Gas Distribution Corp.,* 437 F.Supp. 715 (W.D.Pa.) *aff'd* 601 F.2d 573 (3d Cir. 1977). Moreover, an out-of-state student is presumed to lack the intention necessary to establish a new domicile. 13 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3619 (1975). Although Mr. Shishko stated at trial that at the time of the accident he intended to finish school and seek em-

**2.** § 671. Definitions
    1. "Basic economic loss" means, up to fifty thousand dollars per person:
        (a) all necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services ....

**3.** Because I am construing a Pennsylvania statute, I must apply a definition of domicile found in Pennsylvania case law. "Domicile" for federal diversity jurisdiction and conflict of law purposes may differ. *See* 26 Wright, *Law of Federal Courts,* 3d Ed. 1976 at 99 n. 4. The result, however, would not differ in this case if I were to apply the Restatement (Second) of Conflicts or the federal diversity cases.

ployment "in the area," objective factors strongly suggest that Mr. Shishko had no intention of remaining in Pennsylvania. Shishko's trial testimony established that he was a twenty-year-old college junior when the accident occurred. He had lived in the college dormitories during his freshman and sophomore years and had returned "home" (his word) to his parents' house in Plainview, New York, to work during the summers of 1978 and 1979. During his junior year, when the accident occurred, Shishko was living in a university-owned apartment complex. His parents were paying for his education. His student bills were mailed to his parents' home in New York. He had a New York driver's license. He had never applied for a Pennsylvania driver's license. He filed tax returns to the state of New York as a New York resident in 1977 and 1978. He listed his parents' New York address as his address on his federal income tax returns for 1978 and he had a savings account in a New York bank.

From the above facts, it is clear that Shishko was a New York domiciliary.

### IV. The Insurance Contract

■ In *Swezey, supra,* the Third Circuit interpreted § 1009.110(c)(1) of the Pennsylvania no-fault statute. The court held that the contract, which incorporated section 110(c) of the Pennsylvania no-fault act, required that a Delaware domiciliary's medical benefits be determined by the no-fault plan in effect in Delaware. The court stressed that the case did not involve a conflicts of law question but a simple contract claim based on an insurance policy. *Swezey* at 165. The terms of the policy, therefore, would determine the outcome of the case. An insurance contract that is written in accordance with the Pennsylvania no-fault law incorporates the statute so that the Pennsylvania act becomes a term of the contract, but the statute does "not acquire any independent controlling effect."

*Id.* "The incorporation of state statutes does not alter the contractual nature of the claim and the issue remains one of interpreting the policy." *Id.*

Following the mandate of *Swezey, supra,* I must look to the policy to determine whether its terms require a fifty thousand dollar limitation on the medical benefits Shishko can recover.

The relevant portion of section II of the policy states:

What We Pay

We will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured,*[4] caused by accident resulting from the maintenance or use of a *motor vehicle* as a vehicle:

1. Medical Expenses. Reasonable charges incurred for necessary products, services and accommodations needed for:

a. Professional medical, dental, hospital and nursing services for diagnosis, care, and recovery . . . .

The words "in accordance with the *No-Fault Act*" incorporate all the provisions of the Pennsylvania no-fault law into the contract.

Section 110(c) provides that the basic loss benefits[5] available to a victim shall be determined pursuant to the state no-fault plan in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. 40 P.S. § 1009.110(c)(1). Because I have found that Mr. Shishko was a New York domiciliary, I must look to New York law to determine whether the New York plan is a no-fault plan as defined by the regulations in 31 Pa.Code § 66.41(b)(2). *Swezey, supra* at 166. If it is a no-fault plan, I must determine the basic loss benefits provided by the New York plan.

Both sides concede that the Comprehensive Automobile Insurance Reparations Act is a no-fault plan. As required by Pennsylvania regulations, it provides for compulso-

---

4. Defendant's counsel conceded at argument that Shishko is an "insured" under this section of the policy.

5. Basic loss benefits include "allowable expenses", 40 P.S. § 1009.202(a). As defined in 40 P.S. § 1009.103, allowable expenses include reasonable charges for medical treatment.

ry automobile insurance (§ 672(1)); first party benefits (§ 672(1)) and a restriction on the right to bring action for non-economic detriment (§ 673(1)). Because the New York act is a no-fault plan, section 110(c)(1) as incorporated into the policy "restricts the amount recoverable, but does not eliminate ... entitlement to benefits under the insurance contract." *Swezey, supra,* at 167. Section 671(1) of the New York act restricts "basic economic loss" to fifty thousand dollars. Medical expenses are included in "basic economic loss."

If the policy in question here were virtually the same as that in *Swezey, supra,* my analysis would end here. There is, however, a crucial difference between the policies.

In *Swezey, supra,* the policy provided that:

In accordance with Pennsylvania No-Fault Motor Vehicle Insurance Act, the Company will pay any or all personal injury protection benefits for: (a) medical expenses, ... for bodily injury to an eligible person due to an accident resulting from the ... use of a motor vehicle ....

The portion of the State Farm policy that I have just discussed parallels the language of the *Swezey* policy. The policy in this case, however, contains an additional section not encountered in the *Swezey* policy. It includes a portion entitled *Limits of Liability.* The *Limits of Liability* portion is laid out as follows:

Limits of Liability.

1. The Most We Pay.

   a. The most we pay for *each insured* is limited to the amounts shown in the schedule for *your* coverage symbol.

   .    .    .    .    .

2. Schedule.

| Coverage Symbol | Medical Expenses | Work Loss | | | Replacement Services Loss Per Day For 1 Year | Funeral Expenses | Survivor's Loss |
|---|---|---|---|---|---|---|---|
| | | Monthly Maximum | | Total Maximum | | | |
| | | You | Any Other Insureds | Each Insured | | | |
| P40 through P46 | No Limit | 500 | 1,500 | 15,000 | 25 | 1,500 | 5,000 |
| P50 through P56 | No Limit | 1,000 | 1,000 | 15,000 | 25 | 1,500 | 5,000 |
| P60 through P66 | No Limit | 1,500 | 1,500 | 25,000 | 35 | 1,500 | 10,000 |
| P70 through P76 | No Limit | $2,500 | $2,500 | $50,000 | $50 | $1,500 | $15,000 |

■ In Pennsylvania,[6] because insurance policies "are considered to be contracts of adhesion, any ambiguity in the policy '*must be construed against the insurer, and in a manner which is more favorable to coverage.*'" *Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289 (3d Cir. 1982), *quoting Buntin v. Continental Insurance Co.,* 583 F.2d 1201, 1207 (3d Cir.1978) (emphasis in original). *Houghton, supra,* goes on to state:

Thus, under Pennsylvania law, ambiguous terms of an insurance policy are construed against the insurer. This principle stems from Pennsylvania's concern that insurance companies, because of their superior bargaining position, should not be permitted to thwart the reasonable expectations of the consumer purchaser. *Id.* at 292.

■ The question then arises whether the appearance of the schedule creates an

---

6. Subject matter jurisdiction is based on diversity of citizenship in this case. Therefore, I must apply Pennsylvania contract and insurance law.

ambiguity. The schedule appears to offer to a non-Pennsylvania domiciliary unlimited medical benefits whereas the section of the policy incorporating the no-fault statute would limit Shishko's recovery of medical benefits to fifty thousand dollars. While the language of a contract should not be tortured to create an ambiguity where none exists, *Houghton, supra,* at 292, the apparent difference between the demands of the statute and the provisions of the policy clearly does create an ambiguity. That ambiguity must be construed against State Farm.

■ Under Pennsylvania law, an insurer can contract to provide more coverage than that required by law. *See State Farm Mutual Automobile Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (Pa.1978) (statute governing uninsured motorist coverage mandates floor of minimum protection to be afforded.). Even if the Pennsylvania no-fault act as incorporated into the contract would limit recovery of an out-of-state victim to his domiciliary state's benefits, an insurance company could contract to provide unlimited medical benefits to all victims, whether in-state or out-of-state domiciliaries. A consumer purchaser, by looking at the schedule, could reasonably expect that the company had bargained to provide more than that minimally required by law. He could reasonably expect that any victim would receive unlimited medical benefits.

Besides the expectations aroused by the face of the schedule, two other factors support this conclusion. First, the *Swezey* policy contained a statement that

... the premiums for and the coverage of this policy conforms [sic] to the Pennsylvania No-Fault Motor Vehicle Insurance Act.

This statement is absent from the policy in question here. Thus, the fact that the company does not assert that its premiums are calculated to conform with the no-fault act suggests that both premiums and coverage may exceed that required by Pennsylvania law. Second, the other benefits provided for in the schedule under the P–70 coverage symbol exceed the basic loss benefits mandated by the Pennsylvania statute. Work loss, replacement services loss and survivor's loss benefits are not basic loss benefits; they are added loss benefits. 40 P.S. § 1009.207(a) requires that obligors "shall offer or obligate themselves to provide added loss benefits including: (1) loss excluded from basic loss benefits by limits on allowable expense, work loss, replacement services loss, and survivor's loss." The guidelines for interpreting section 207 require minimum mandatory offerings of packages which will cover the insured for:

| Month Work Loss Limit | Aggregate Work Loss Limit | Survivor's Loss | Replacement Services Loss |
|---|---|---|---|
| Option 1–$1,500 | $25,000 | $10,000 | $35 a day (for one year) |
| Option 2–$2,500 | $50,000 | $15,000 | $50 a day (for one year) |

31 Pa.Code Section 66.56.

The schedule in the policy goes beyond the options required by the guidelines. The State Farm policy schedule defines "insured" to include a pedestrian struck by an insured motor vehicle. This definition of "insured", as defendant admitted at reargument, includes Mr. Shishko.[7] The guidelines found at 31 Pa.Code section 66.56 require that obligors offer minimum packages to cover the "insured" as defined in section 103 of the Pennsylvania no-fault act. Section 103 of the act defines insured as a named insured, spouse, or relative, a definition which would exclude Shishko.[8]

---

**7.** Section 2 of the policy defines insured. The policy states:

> Definitions
> *Insured*—means:
> (1) *You* or any *relative;*
>   a. while *occupying* a *motor vehicle;* or
>   b. struck as a pedestrian by a *motor vehicle;*

> (2) Anyone else while *occupying* or struck as a pedestrian by a *motor vehicle* insured under liability and no-fault coverages of this policy.

**8.** In its relevant part section 103 states:
> "Insured" means:

Because the policy defines insured in broader terms than the statute and its guidelines require, the company has gone beyond the minimum requirements of the Pennsylvania no-fault law in offering added loss benefits. Because the medical expenses are included in the same schedule, a reasonable consumer purchaser could assume that he has purchased the option of recompensing victims in excess of that required by the no-fault law. A consumer purchaser would have a valid reason for choosing to contract to provide out-of-state victims with unlimited medical benefits even though their state of domiciliary would limit the benefits. An insurance contract that provides unlimited benefits may shield the named insured from tort liability if the victim's harm exceeds the domiciliary state's recovery limits.[9]

Because I find that the contract is ambiguous, I will enter a declaratory judgment in favor of the plaintiff. In view of the somewhat complex procedural posture of this case, I will treat the complaint as one for declaratory judgment and will not enter a money judgment for principal, interest or attorney's fees. If the parties cannot agree on these, I shall entertain an appropriate motion.

(A) An individual identified by name as an insured in a contract of basic loss insurance complying with this act; and
(B) A spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured . . . .

9. Section 110(c)(2) of the Pennsylvania No-Fault Act states:

The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domiciled in a state, such right to sue shall be determined by the law of the state in which the accident resulting in injury or damage to property occurs.

Section 673 of the New York act provides a tort remedy to recover amounts exceeding the fifty thousand dollar basic economic loss. Presumably, Shishko would have a tort remedy against Schreder for medical costs exceeding fifty thousand dollars if the contract did not provide the benefits.