551 A.2d 283

Mary A. JEFFERSON, Appellant,

v.

STATE FARM INSURANCE COMPANIES and Blue Cross of Greater Philadelphia and Health America Plan and Equitable Life Assurance.

Superior Court of Pennsylvania.

Argued Oct. 27, 1988.

Filed Dec. 8, 1988.

168

John Enright, Philadelphia, for appellant.

Robert Hayes, Philadelphia, for Blue Cross, appellee.

Before CIRILLO, President Judge, and WIEAND and McEWEN, JJ.

CIRILLO, President Judge:

This is an appeal from a summary judgment entered by the Court of Common Pleas of Philadelphia County in favor of appellee Blue Cross of Greater Philadelphia and against appellant Mary Jefferson.

Mary Jefferson was hit by a van in February of 1984. Because of injuries she allegedly sustained to her left shoulder and hip, she underwent extensive medical and hospital treatment. At the time of her injury, Jefferson was insured for hospitalization expenses under a group insurance policy between her employer, the Philadelphia School District, and Blue Cross of Greater Philadelphia, and for medical expenses by Equitable Life Assurance Society. Shortly before the accident, Jefferson had voluntarily terminated her coverage with Blue Cross and Equitable, and had switched her insurance coverage to an HMO plan provided

by Health America. The termination was to become effective on March 15, 1987.

Jefferson submitted claims for her hospital and medical expenses to Blue Cross, Equitable, and Health America, as well as State Farm Insurance Company, her No–Fault automobile insurer. State Farm refused payment of the claims, contending that her primary insurers should pay her medical and hospital expenses. Blue Cross, Equitable, and Health America also refused to pay the claims. Blue Cross, the only appellee here, claimed that Jefferson was not insured for any expenses arising after March 15, 1987, the date upon which her termination became effective. Further, it noted that it had never received any notification from the health care providers of the services in question, only a letter from Jefferson's attorney, and therefore, in any case, it was unable to determine which of the claims made by Jefferson were for expenses covered under the insurance policy.

The parties agreed to arbitrate the matter, and the arbitrator found for the defendant insurers. Jefferson appealed the arbitrator's decision to the Court of Common Pleas of Philadelphia County. Appellee Blue Cross moved for summary judgment, denying that there was any issue of material fact, and arguing that as a matter of law, it was not liable for any expenses arising after the termination date. Jefferson argued that an issue of material fact did exist, although she did not state what that issue was, and also argued that if no factual dispute did exist, she, rather than Blue Cross, was entitled to judgment as a matter of law. She contended that the policy was an occurrence policy, and that therefore, the insurer was liable for all expenses arising out of any injury occurring during the policy period. The trial court granted summary judgment for Blue Cross, finding that the policy covered expenses arising during the policy term, rather than injuries occurring during that period. Jefferson then appealed to this court.

Jefferson argues the same issues to us on appeal as she argued in her motion contesting summary judgment. In reviewing a grant of summary judgment, the appellate court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. To uphold the trial court's grant of summary judgment, not only must there be no genuine issue of material fact, but the moving party must have been entitled to summary judgment as a matter of law. *Curry v. Estate of Thompson*, 332 Pa.Super. 364, 368, 481 A.2d 658, 659 (1984).

Here, Jefferson argues that the case involves genuine issues of material fact with regard to the termination clause included in her policy which should have resulted in the denial of Blue Cross' motion for summary judgment. Jefferson is not, however, explicit on what those material issues of fact are. Rather, she seems to argue that the trial court erred as a matter of law in granting summary judgment because the policy provision upon which it relied in ruling for Blue Cross was ambiguous. She argues that the provision in question could have reasonably led her to believe that her coverage would continue after the policy terminated on March 15, 1987, because the injury which gave rise to those expenses occurred during the policy term.

The interpretation of an insurance policy is a question of law for the court to consider. *Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978). The policy must be read in its entirety, and the words must be given their plain and proper meaning. It should be read to avoid ambiguities if possible, and the language should not be tortured to create them. *Monti v. Rockwood Insurance Co.*, 303 Pa.Super. 473, 476, 450 A.2d 24, 25 (1981). A provision is ambiguous only if reasonably intelligent persons considering it in the light of the entire policy could honestly differ as to its meaning. *Adelman*, 255 Pa.Super. at 123, 386 A.2d at 538. Any truly ambiguous term must be given a construction favorable to the insured. *Id.*

■  The policy provision in question is entitled, "Termination Without Claim Prejudice," and reads as follows:

When this agreement is terminated, except for termination by incorrect information or misrepresentation, and a Subscriber is receiving in-patient benefits on the date of such termination, benefits will continue to be provided only to the date of discharge or expiration of eligible benefit days, whichever is earlier.

Jefferson argues that the title of the policy creates an ambiguity; she claims it could be read to state that the expiration of the insurance policy will not terminate benefits, and that this could lead a reasonable person to believe that entitlement to insurance benefits are governed by whether the date of the accident falls within the policy period. We disagree.

According to a Michigan court analyzing the somewhat sparse and divergent case law on this subject, courts have come to decisions in these situations by analyzing the risk insured in each case. *See Auto–Owners Insurance Co. v. Blue Cross & Blue Shield of Michigan,* 132 Mich.App. 800, 349 N.W.2d 238 (1984). Courts have found coverage to extend beyond the policy period in cases in which the risk insured could have been construed as expenditures arising out of an accident. *Id.* at 817, 349 N.W.2d at 246. In those cases, the benefit is held to have vested when the accident occurred. *See Myers v. Kitsap Physicians Service,* 78 Wash.2d 286, 474 P.2d 109 (1970). We agree with the Michigan court that the policy considerations behind permitting benefits under a policy which insures loss related to accident, injury, illness, and so forth, to continue past the effective date of the policy, are not the same as those governing a situation in which medical and hospital expenses are the risks insured. In cases in which the risk insured are the expenses arising out of medical or hospital services, the benefits are cut off when the policy period expires:

[C]overage was provided to the plaintiff as a Blue Cross/Blue Shield group subscriber. Continuation of

that coverage was to be furnished in consideration of payment in advance of the rates applicable for the type and extent of coverage specified in the contract. Thus, it appears coverage, to be effective, is dependent upon continued payment of premiums by the subscriber. It seems, therefore, axiomatic that upon termination of the contracts and cessation of premium payments, the only coverage available is that stipulated in the contracts. *Blue Cross of Florida, Inc. v. Dysart,* 340 So.2d 970, 972 (Fla.1976); *see also Bartulis v. Metropolitan Life Insurance Co.,* 72 Ill.App.2d 267, 218 N.E.2d 225 (1966). This Commonwealth has already indicated that where a clear contract provision provides for the termination of benefits as of the cancellation date of the policy, that termination is not contrary to public policy. *See Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 354, 479 A.2d 949, 953–54 (1984).

The Third Circuit Court of Appeals appears to have followed these considerations in *Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289 (3rd Cir.1982). In that case, the court considered an insurance policy which the insured claimed was ambiguous concerning the risk that had been insured. After examining the terms of the entire contract, the court affirmed the district court's decision that the policy was ambiguous, finding that the policy did not clearly manifest the intention of both parties to enter into a contract under which the insurer was obligated to pay the insured only those expenses arising during the policy period. *Id.* at 292. The court pointed out that under the policy provision entitled, "BENEFITS," an insured could reasonably have been led to believe that the policy insured payment of certain medical expenses up to the maximum benefit, regardless of the expiration of the term of the policy. *Id.* Further, the court pointed out that there was no definition of the term "loss," in the policy, and that the phrase, "while this policy is in force," which was included in the definitions of the terms, "sickness" and "injury," could have been construed to limit those terms, rather than the

term, "loss." *Id.* at 292–93. For these reasons, the court construed the policy in favor of the insured, and affirmed the district court's grant of summary judgment in her behalf. *Id.* at 296.

Jefferson contends that the Third Circuit placed weight on the determination that the policy provision which addressed continuation of benefits after termination was ambiguous. She argues that the court found the provision to be ambiguous because of its title, which referred to the extension of benefits, when the provision actually limited those benefits, and that its discussion should be given great weight here because the caption of the similar provision in this policy quoted above also creates a similar ambiguity. We note that although the Third Circuit mentioned the provision, and indicated in a footnote that it would have had serious reservations about giving that provision effect because of the misleading nature of its caption, it refused to consider the provision because it was raised for the first time on appeal. *Id.* at 295 n. 5. The court's discussion is dicta; we need not consider it. In any case, the court's holding that the policy was ambiguous was not based on the title to this policy provision, but upon the court's examination of the policy *in its entirety,* as was proper.

An examination of the policy before us leads us to the conclusion that there is no ambiguity concerning the risk insured by the policy. It is clear that the insurer undertook to insure hospital related expenses rather than loss arising from injuries. The policy describes the benefits provided to the insurer in terms of "services" provided by the hospital or extended care facility. Under the policy, an insured may be eligible for either "in-patient" or "out-patient" benefits. Article I of the policy, which deals with in-patient benefits, states:

All benefits provided under this Agreement for in-patients shall be available to each Subscriber for not more than the number of days specified below for each benefit period, based on the Subscriber's classification and length

of continuous membership in Blue Cross at the time of admission.

"Admission" is defined in the definition section of the policy as "the actual entry into a hospital or extended care facility of a Subscriber who is to receive in-patient services...." Section 2 of Article I goes on to discuss benefits available in Blue Cross member hospitals, listing them as accommodations, "[a]ll additional services usually provided and billed for by hospitals ... required solely for the institution and/or the application of therapy for the condition for which hospitalization is required," including but not limited to meals, laboratory work, x-rays, transplant services, newborn care, ambulant care, and diagnostic study. Article I also outlines benefits available in hospitals connected to other Blue Cross plans, in non-member hospitals, and in member and non-member extended care facilities:

*Section 3. Benefits in Contracting Hospitals of any other Blue Cross Plan*

Benefits will be provided for in-patient hospital services furnished by a contracting hospital or any other Blue Cross Plan....

\*　　\*　　\*　　\*　　\*　　\*

*Section 4. Benefits in Non–Member Hospital*

Upon receipt of a valid bill, itemized as required by Blue Cross, for the Subscriber's hospitalization as an in-patient in a Non–Member Hospital, Blue Cross will pay such Subscriber an allowance of up to $100.00 per day for the first day, and up to $50.00 per day for each day thereafter toward the hospital's regular charges.

Again, these benefits are defined in terms of services provided by the facility, rather than in terms of loss resulting from injury sustained by the insured.

Article II discusses out-patient benefits in member and non-member hospitals, as well as contracting hospitals of another Blue Cross plan in the same manner:

*Section 1. Benefits in Blue Cross Member Hospitals*

[Certain listed] benefits when provided to the Subscriber as an out-patient of a Blue Cross Member Hospital are

subject to the payment by the Subscriber of a $10.00 deductible toward the hospital's charges for such services....

The provision for out-patient benefits in contracting hospitals of other Blue Cross plans and non-member hospitals also requires the receipt of a valid and itemized bill; the insurer will then pay the insured seventy-five percent of the out-patient charges that would be covered in a member hospital.

These provisions indicate that the risk insured by the insurer was the expense incurred by hospitalization or treatment in affiliation with a hospital arising during the policy period. Therefore, unless the contract itself stipulates for coverage after the cessation of the premium payments, that is, after policy termination, summary judgment was properly granted. As we have stated, the policy does have an explicit provision which extends benefits, under certain conditions, beyond the date the policy is terminated. However, the provision is unhelpful to Jefferson here. The policy provides that if the insured is receiving in-patient benefits at the time of the policy's termination, those benefits continue until that insured's date of discharge, or until the insured's eligible benefit days—as outlined under Article I—are expended, whichever is sooner.

This policy provision is similar to one considered by the Pennsylvania Supreme Court in *Guardian Life Insurance Co. v. Zerance, supra.* In that case, the court was called upon to determine whether or not a provision in a group disability policy was ambiguous. The provision provided for benefits to continue under the provision if the insured was totally disabled and under the care of a physician on the date of the policy termination. *Zerance,* 505 Pa. at 349, 479 A.2d at 951. The insured claimed that his right to receive benefits vested when he became disabled under the terms of the policy. The court found that the question was not whether the insured was entitled to benefits under the policy, but rather whether the cancellation of the policy terminated that entitlement:

The insured's right to benefit payments can rise no higher than as provided by the terms of the policy. Under the policy, cancellation extended the right to benefits, subject to the provisions extending benefits in particular cases. When the insurance terminated for any reason other than non-payment of premium or exhaustion of benefits [two exceptions stated within the termination provision] the policy provided for "coverage after termination" which extended the insurance coverage until, "the date total disability ends, but in no event beyond the last day of the calender year next following the calender year in which [the] insurance terminated." Where the policy language is unambiguous, a court cannot adopt a construction which conflicts with the clear meaning of the language.... Language in a policy that is clear cannot be interpreted to mean other than what it plainly says.... The language in the policy in question is clear and unambiguous and must be enforced as written.

*Id.*, 505 Pa. at 353, 479 A.2d at 953.

Like the supreme court in *Zerance,* we find no ambiguity in either the caption or the substance of the termination provision before us. We do not find the caption of this provision to be misleading. The provision it describes outlines those instances in which the policy may be terminated without prejudice to the insured's claim. Although we have found that policy provisions are at times misleading, and therefore should be construed in favor of the insured, we have never intimated that an insured may rest upon claims that the title of a provision was vague without considering its substance. There is nothing vague about the provision in question, and when read in conjunction with its caption, the plain meaning of both is clear. To construe this section in such a manner as to hold that the insured had a reasonable expectation that the claim would continue to be valid after the expiration date of the policy would be tortuous indeed. "We may not rewrite the insurance policy contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy. *Id.* Be-

cause Jefferson does not meet the requirements for continued coverage under the provision, her benefits were properly extinguished upon the date her cancellation of the policy became effective.

The order of the trial court granting summary judgment is affirmed.