594 A.2d 733

**CURBEE, LTD., t/a Black Angus Inn and George R. James and Elsie D. James and Curtis A. James and Betty Jean James, Appellants,**

**v.**

**Louise RHUBART, Administratrix of the Estate of Douglas Rhubart, Deceased and Mary DeFazio, Administratrix of the Estate of Thomas J. Blair, Deceased, and St. Paul Fire and Marine Insurance Company and Erie Insurance Group and Old Guard Mutual Insurance Company and American Casualty Company, Appellees.**

Superior Court of Pennsylvania.

Argued April 4, 1991.

Filed Aug. 5, 1991.

Henry T. Zale, Pottstown, for appellants.

Thomas X. McAndrew, Jr., Media, for DeFazio, appellee.

Donald M. Grimes, Media, for Erie Ins., appellee.

Phillip J. Meyer, Philadelphia, for American Cas., appellee.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

WIEAND, Judge:

This court has been asked to review a declaratory judgment rendered by a trial court in an action to determine which liability insurance carrier or carriers are required to provide a defense and indemnify their insureds following the supplying of wine to a guest who was subsequently involved in a fatal accident. A recitation of the facts and the policy provisions is essential to an understanding of the issues.

Curtis James and Betty Jean James, husband and wife, are the principal stockholders of Curbee, Ltd., the corporation which owns and operates the Black Angus Inn, a restaurant in Chester County. On April 28, 1986, Betty Jean James hosted a luncheon for employees of the Black Angus in appreciation for their work during the Easter

holiday. The luncheon was held at an independent establishment known as the Coventry Tea Room, which did not sell alcoholic beverages. Consequently, Mrs. Curtis brought to the luncheon approximately nine (9) bottles of wine from the stock of the Black Angus, a licensed establishment. This wine was served during the luncheon.

Included among the employees who attended the luncheon and drank wine was Thomas Blair. After the luncheon, he went with several other employees to the Flowing Springs Inn, a tavern, where they consumed additional alcohol. After he had left the Flowing Springs Inn and while driving his car, Blair was involved in a collision with a vehicle operated by Douglas Rhubart. Both drivers died as a result of injuries received in the accident. The administratrices of both estates filed death actions in which Curtis and Betty Jean James and the Black Angus Inn were named as defendants.

After the complaint had been served, Curtis and Betty Jean James and Curbee, Ltd. requested St. Paul Fire and Marine Insurance Co. and Erie Insurance to provide a defense pursuant to policies of insurance in effect at the time of the accident. Curtis and Betty Jean James also requested a defense from American Casualty Company under a homeowner's policy then in effect. When all insurers declined to afford coverage because of various policy exclusions, Curbee, Ltd. and the Jameses commenced declaratory judgment proceedings to determine issues of coverage. The trial court thereafter entered summary judgments in favor of Erie Insurance and American Casualty Co. on the basis of policy exclusions. The exclusion in the Erie policy, which was a general liability policy, pertained to the distribution, selling or serving of alcoholic beverages. The American Casualty policy contained an exclusion pertaining to a "business pursuit" of the homeowners.

A motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). In reviewing an order granting summary judgment, an appellate court examines the record in the light most favorable to the non moving party. *Laventhol & Horwath v. Dependable Insurance Associates, Inc.*, 396 Pa.Super. 553, 558, 579 A.2d 388, 390 (1990); *Persik v. Nationwide Mutual Insurance Co.*, 382 Pa.Super. 29, 31, 554 A.2d 930, 931 (1989), *allocatur denied*, 522 Pa. 613, 563 A.2d 499 (1989); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930 (1984).

The interpretation of an exclusion in a policy of insurance is a question of law for the court. *Jefferson v. State Farm Ins.*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988); *Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978). An interpretation of an exclusion clause must be based on a reading of the policy in its entirety, giving the words thereof their plain and proper meaning. *Great American Insurance Co. v. State Farm Mutual Ins. Co.*, 412 Pa. 538, 194 A.2d 903 (1963); *Jefferson v. State Farm Ins., supra; Monti v. Rockwood Ins. Co.*, 303 Pa.Super. 473, 476, 450 A.2d 24, 25 (1982). The policies should be read to avoid ambiguities, if possible. The language should not be tortured to create an ambiguity. *Jefferson v. State Farm Ins., supra; Monti v. Rockwood Insurance Co., supra.* A provision is ambiguous only if reasonably intelligent persons, considering it in the light of the entire policy, can honestly differ as to its meaning. A truly ambiguous term must be construed in favor of the insured. *Jefferson v. State Farm Ins., supra; Monti v. Rockwood Insurance Co., supra; Adelman v. State Farm Mutual Auto Ins. Co., supra.* See also: *Celley v. Mutual Benefit Health and Accident Association*, 229 Pa.Super. 475, 481–484, 324 A.2d 430, 435 (1974).

We agree with the trial court that there is no ambiguity in the relevant provisions of the policy issued by Erie Insurance. The Erie policy generally provided indemnification "for damages because of personal injury or property

damage for which the law holds anyone we protect responsible if caused by an occurrence covered by [the] policy." Coverage was excluded, however, with respect to

(6) damages for which anyone we protect may be liable

(a) because of the violation of an ordinance or law pertaining to the business of manufacturing, distributing, selling or serving alcoholic beverages. This exclusion (6)(a) applies only when engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or if an owner or lessor of any such premises.

(b) as a result of the sale, serving or gift of alcoholic beverages to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person. This exclusion (6)(b) does not apply to an owner or lessor of premises who is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages.

The intent of the parties as disclosed by this standard exclusion is clear. The Erie policy did not provide coverage to a licensee for liability arising from providing alcohol for consumption. The insureds evidently understood this exclusion because they procured a separate policy from St. Paul Fire and Marine Ins. Co. which specifically covered liability arising from such activity. It is undisputed that the Black Angus was engaged in the business of selling and serving alcohol and that wine from the restaurant's inventory was consumed by Blair at the luncheon. It is of no consequence, in interpreting the exclusion, that the alcohol provided by appellants was consumed away from the licensed premises or that it was not directly served by an owner or employee of the restaurant. When the restaurant provided the alcohol for consumption the exclusion was triggered. Its effect was to relieve Erie of an obligation to defend or indemnify appellants under the circumstances alleged in the tort action.

■ The exclusion in the homeowners policy issued by American Casualty Co. is not so clear. The "business pursuits" exclusion therein is as follows:

**1. Coverage E—Personal Liability and Coverage F— Medical Payment to Others do not apply to bodily injury or property damage:**

. . . .

b. arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-business pursuits.

The trial court concluded that the employee luncheon was a "business pursuit" because it was intended only for employees, was paid for from the restaurant's budget, and was for the purpose of expressing appreciation to employees in an effort to promote workplace morale and efficiency. The trial court, however, failed to consider all the language of the exclusion which excepts from application of the exclusion those "activities which are ordinarily incident to non-business pursuits."

The American Casualty policy provides coverage for those activities which, although they occur while the insured is engaged in a business pursuit, are nevertheless "ordinarily incident to a non business pursuit." The first paragraph of the exclusion removes from coverage those claims for injury or damage which arise from business pursuits. There is an exception, however, with respect to activities which are normally incident to non-business pursuits. Such activities are covered. "Thus, the inquiry is not whether the insured was engaged in a business pursuit, for the [exception] plainly has reference to accidents that occur in the carrying on of the business. [citations omitted]. Rather, it is whether the particular activity at the time of the accident ... was nevertheless one ordinarily incident to nonbusiness pursuits." *New Jersey Property*

*Liability Guaranty Assoc. v. Brown,* 174 N.J.Super. 629, 633, 417 A.2d 117, 119 (1980).

> ... The entire paragraph [the exclusionary clause], therefore, giving to its components their common and ordinary meaning ... may fairly be read as saying that, as a general proposition, there will be no liability coverage with respect to an insured's "business pursuits," but that, as an exception to this broad rule, coverage will be extended to liability which arises, even though connected in some causal manner with the insured's "business purposes," out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits. In other words, to give any meaning at all to the excepting clause, the policy must be read to extend coverage to certain acts or omissions which are not, by their very nature, tainted by being associated with an insured's business pursuits, but which, nevertheless, with respect to the insured's potential liability arising therefrom, may have been causally related to such business pursuits. [280 F.Supp. at 64–65; citation omitted].

*Id.* at 633–634, 417 A.2d at 119–120, quoting *Gulf Insurance Co. v. Tilley,* 280 F.Supp. 60, 64–65 (N.D.Ind.1967), *aff'd,* 393 F.2d 119 (7th Cir.1968). In short, "[t]he policy covers acts, which by their nature, are not associated with the insured's business pursuits, but which are causally related to the business activities." *State Farm Fire & Cas. Co. v. Moore,* 103 Ill.App.3d 250, 259, 58 Ill.Dec. 609, 613, 430 N.E.2d 641, 645 (1981). See also: 7A Appleman, Insurance Law & Practice § 4501.11.

In the instant case, Betty Jean James was unquestionably engaged in a business pursuit when she entertained the restaurant's employees at a luncheon at the Coventry Tea Room. By entertaining the employees in this manner, however, she was engaged in an activity which was not a normal part of the restaurant business in which she was engaged. Rather, it was an activity ordinarily incident to a social and non-business pursuit. Such an activity was with-

in the exception to the exclusion; and, therefore, coverage was provided.

The declaratory judgment holding that Erie Insurance is not required to provide a defense is affirmed. The declaratory judgment in favor of American Casualty Company, however, is reversed, and that matter is remanded to the trial court for the entry of a judgment declaring that the homeowner's policy issued by American Casualty provides coverage to Curtis James and Betty Jean James for the occurrence which is the subject of the death actions in which they have been named parties defendant. Jurisdiction is not retained meanwhile.