655 A.2d 123

**RORER GROUP, INC., Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1994.

Filed Jan. 13, 1995.

Reargument Denied March 22, 1995.

James M. Marsh, Philadelphia, for appellant.

Imelda Terrazina, Chicago, IL, for appellee.

Before OLSZEWSKI, JOHNSON and HESTER, JJ.

OLSZEWSKI, Judge:

Appellant Rorer Group, Inc. counts among its subsidiaries a company, Armour, that manufactures a human plasma derivative called "Albuminar." The manufacturing process requires mixing human plasma with other organic compounds in mechanically refrigerated pressure vessels. One such pressure vessel at the Armour plant, Vessel 16, has two mechanical refrigeration systems: "(1) a mechanical compressor cools glycol which is circulated by a pump through the hollow between the inner wall and outer jacket of Vessel 16; and (2) a mechanical compressor cools a methyl alcoholethyl alcohol mixture which is circulated by a pump through four (4) hollow baffles [which are attached to the vessel walls at several points] inside Vessel 16 (R–69a–70a)." Brief for appellant at 5.

In October of 1988, Armour discovered an abnormally high level of alcohol in the contents of Vessel 16. After extensive testing, Armour determined that a substantial amount of methanol had leaked into the Albuminar product. Armour recalled a number of batches for decontamination. The company's investigation revealed that cracks in the baffles had caused the leakage. A subsequent investigation by outside

firms revealed that the cracks indeed caused the leaking and that the cracks themselves were caused by corrosion. The corrosion, in turn, was caused by a latent defect in the steel used to manufacture the Vessel itself. Opinion 4/14/94 at 4–5.

Appellant filed suit against its insurance company, appellee Insurance Company of North America, for the amount required to fix Vessel 16 and decontaminate all of the tainted Albuminar. The parties cross-filed for summary judgment. After hearing arguments, the Honorable Albert R. Subers found that the insurance policy did not cover the damage in question as a matter of law. Judge Subers granted summary judgment in favor of appellee. This appeal followed.

Appellant's main insurance policy, effective July 1, 1988–July 1, 1989, was an all-risk policy, insuring appellant against risk of direct physical loss or damage, except as otherwise excluded. Opinion 4/14/94 at 2. The policy excluded the following:

12. *PERILS EXCLUDED*

This policy does not insure against loss or damage caused directly or indirectly by any peril excluded. Such loss or damage is excluded whether contributed to, in whole or in part, by any excluded peril.

*       *       *       *       *       *

I. Corrosion, decay, deterioration, erosion, evaporation, inherent vice, latent defect, leakage, loss of weight, marring or scratching, rust, shrinkage, wear and tear, wet or dry rot or any quality in property which causes it to damage or destroy itself;

*       *       *       *       *       *

U. The cost of correcting or making good:

(1) Error, omission, deficiency in designs, plans, programs or specifications;

(2) Faulty or defective workmanship, materials or supplies;

as respects exclusion U., this policy insures any ensuing loss or damage caused by direct physical loss or damage by an insured peril.

R.R. at 23a–26a.

In addition to this main policy, appellant also purchased a Boiler and Machinery Endorsement which extended coverage in specified areas. It stated:

A. This policy is extended to cover the following:

1.a. explosion in or of the following property owned, operated, or controlled by the Insured: (1) steam boilers including equipment attached to and forming a part thereof; (2) steam turbines, steam engines, steam pipes interconnecting any of the foregoing; or (3) gas turbines ...

b. rupture, bursting, cracking, burning or bulging of steam boilers, including equipment attached to and forming a part thereof, steam turbines, steam engines, steam pipes interconnecting any of the foregoing, hot water boilers or other equipment for heating water, pressure vessels, including equipment attached to and forming a part thereof, or gas turbines;

c. mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force;

d. electrical injury or disturbance to electrical appliances, devices, fixture, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated; except loss by fire ensuing therefrom.

R.R. at 32a–33a (emphasis added). Therefore, the policy excluded any loss caused by a latent defect or corrosion, but the Endorsement specifically included any loss caused by cracking. The damage in the instant case was caused by all three: latent defects, corrosion, and cracking.

■ Appellant first claims that the Endorsement should be read separately from the main policy, so that the exclusions found in paragraph 12 of the main policy would not apply to the Endorsement. While it is true that the Endorsement was specifically negotiated and separately paid for, it is not a separate contract. The Endorsement clearly stated, "[t]his

policy is extended to cover the following." R.R. at 32a. This reference to the original policy and the statement that the Endorsement was to serve as an extension of that original policy both indicate that the parties intended one contract. *See Heilwood Fuel Co. v. Manor Real Estate Co.*, 405 Pa. 319, 327–28, 175 A.2d 880, 884 (1961) (primary inquiry in deciding if a contract is separate and distinct is whether the language clearly indicates the intent of the parties). *See also Kyle v. McCarron*, 201 Pa.Super. 403, 405–07, 192 A.2d 253, 255 (1963) ("[t]he whole policy, including the endorsements, must be considered in determining the liability of the insurance company, and the risk the policy was issued to cover"). Therefore, we agree with the trial court that the Endorsement must be read with the main policy, and the paragraph 12 exclusions apply unless the Endorsement specifically modifies or abrogates them.

■ The determination of whether an exclusion clause in an insurance policy has been modified or abrogated is a question of law for the court. *See Curbee, Ltd. v. Rhubart*, 406 Pa.Super. 505, 508–09, 594 A.2d 733, 735 (1991), *appeal denied*, 529 Pa. 649, 602 A.2d 859 (1992); *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). In making such a determination, the court should read the insurance policy in its entirety and give all words their plain and usual meanings. *Curbee*, 406 Pa.Super. at 508–09, 594 A.2d at 735; *Monti v. Rockwood Insurance Co.*, 303 Pa.Super. 473, 476, 450 A.2d 24, 25 (1982).

■ In the present case, the plain meaning of the language fails to show that the exclusions for latent defects and corrosion have been modified or abrogated. Paragraph 12 excludes a number of perils, such as corrosion, latent defects, explosion, mechanical breakdown, electrical injury, and rupture or bursting. The Endorsement extends coverage and abrogates the exclusions as to certain perils, such as explosion, mechanical breakdown, electrical injury, and rupture or bursting. It also adds cracking to the coverage, even though cracking was never previously excluded. It does not address, however, and

therefore cannot abrogate or modify, the exclusions regarding corrosion or latent defects. We therefore agree with appellee that "where explosion, electrical injury, mechanical breakdown, rupture, bursting, cracking, bulging and like perils listed in the endorsement are caused or contributed to by one of the remaining perils excluded in paragraph 12 (here by latent defect), the resulting loss or damage is not covered under the policy." Brief for appellee at 22. This result does not, as appellant argues, render the Endorsement a nullity. Any explosion, electrical injury, mechanical breakdown, rupture and the like that are not caused or contributed to by a remaining exclusion are now covered, where they were not before. If we were to read this otherwise, it would completely nullify the remaining paragraph 12 exclusions any time a peril listed in the Endorsement were to occur. In a case such as this, where the parties bargain at arms length, we cannot read the Endorsement as completely erasing all of the exclusions clearly set out in the main policy.[1] As there is no genuine issue of material fact, the trial judge correctly granted summary judgment for appellee.

Order affirmed.

---

[1]. Appellant also claims that the language of this policy creates an ambiguity which must be resolved in its favor. However, "language should not be tortured to create an ambiguity. A provision is ambiguous only if reasonably intelligent persons, considering it in the light of the entire policy, can honestly differ as to its meaning." *Curbee*, 406 Pa.Super. at 508–09, 594 A.2d at 735. The language in this policy is not ambiguous. Cracking is covered, so long as it was not caused in whole or in part by an excluded peril.