

1995 Decisions

8-31-1995

# PECO v Boden

Precedential or Non-Precedential:

Docket 94-1883

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"PECO v Boden" (1995). *1995 Decisions.* Paper 241.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PECO ENERGY COMPANY

v.

KENNETH HENRY EDMUND BODEN; LONDON & HULL MARITIME
INSURANCE COMPANY LIMITED; INSURANCE COMPANY OF
NORTH AMERICA (U.K.) LIMITED; THE YORKSHIRE INSURANCE
COMPANY LIMITED; INDEMNITY MARITIME ASSURANCE COMPANY
LIMITED,

                                        Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 93-cv-001100
_____

Argued June 15, 1995
Before:  STAPLETON, McKEE, and ROSENN, <u>Circuit Judges</u>
Opinion Filed August 31, 1995
_____

DANTE MATTIONI, ESQUIRE
Mattioni, Mattioni & Mattioni
399 Market Street
2nd Floor
Philadelphia, PA  19106

MICHAEL G. CHALOS, ESQUIRE
HARRY A. GAVALAS, ESQUIRE
MARTIN F. MARVET, ESQUIRE (Argued)
Chalos & Brown
300 East 42nd Street
New York, New York  10017
    Attorneys for Appellants

ELIZABETH K. AINSLIE, ESQUIRE (Argued)
Ainslie & Bronson
2630 One Reading Center
1101 Market Street
Philadelphia, PA  19107

Attorneys for Appellee

_____

OPINION OF THE COURT

ROSENN, <u>Circuit Judge</u>.

This appeal primarily raises a number of intriguing insurance law questions, one of which, the allocation of a deductible among several insurance carriers, is novel. The insured entered into a series of "all risks" policies covering property losses during the policy period. When the insurers rejected the claim of the insured, PECO Energy Company (PECO), it brought a diversity action in the United States District Court for the Eastern District of Pennsylvania. The jury found that PECO sustained theft losses aggregating $1,229,029 over a period of six years.

The district court held that the combined thefts constituted a single occurrence and that it took place in the sixth year of the insurance coverage. The court therefore applied the $100,000 deductible set forth in the policy for that year. Accordingly, it entered judgment of $1,129,029 for PECO against Kenneth Henry Edmund Boden representing Lloyds Underwriters, London & Hull Maritime Insurance Company Limited, Insurance Company of North America (U.K.) Limited, The Yorkshire Insurance Company Limited, Indemnity Maritime Assurance Company Limited (collectively the Underwriters). The Underwriters timely appealed. We vacate and remand.

I.

PECO is a Pennsylvania electric utility with its principal place of business in Philadelphia.  In September 1984, it contracted with Diesel Services, Inc. (DSI), an independent trucking company, to haul its fuel oil to various PECO generating facilities.  DSI transported PECO oil until November 1990 when PECO discovered that DSI had been stealing a portion of the oil on a regular basis.

In November 1985 PECO entered into a contract for insurance covering property losses for one year from four independent insurance companies and six syndicates at Lloyds of London.  Between November 1986 and October 1991, PECO and the Underwriters renewed five one-year insurance policies .  The Underwriters for each policy varied from year to year, but the policies remained essentially the same.  The policies insured "GOODS and/or MERCHANDISE OF EVERY DESCRIPTION WHATSOEVER incidental to [PECO's] business but consisting principally of FUELS . . . shipped in and/or over . . . [a]gainst all risks of physical losses or damage however caused."  Both parties agree that these policies cover the theft of fuel oil.

Each policy provided that covered losses were subject to a deductible.  The 1985-86 policy states that:

> from the amount of each loss or combination
> of losses arising out of any one occurrence,
> an amount equal to 1% of the total value of
> the property to which loss or damage occurred
> shall be deducted.  This deductible, however,
> shall not be less than $10,000, nor more than
> $20,000.

3

Each of the remaining policies provided that there shall be deducted "from the amount of each loss or combination of losses arising out of any one occurrence, US$100,000 any one loss or occurrence."

At trial, PECO acknowledged that it did not have any direct evidence of DSI thefts, except for a limited number observed by PECO investigators in 1990. Nonetheless, PECO posited at trial that DSI had been stealing from it for the duration of the contract between them and that these thefts aggregated between 9.1% and 20% of the oil transported by DSI during the 62 month period that the Underwriters insured PECO.

The jury found that the DSI stole $1,229,029 worth of fuel from PECO, equal to 6.1% of the fuel transported by DSI, and that the thefts were part of a single continuous plan or scheme. The jury also determined that the Underwriters had not acted in bad faith toward the insured. The district court held that DSI's thefts constituted one occurrence because they were part of a single continuous scheme and that this occurrence took place during the 1990-91 policy period. The court applied the $100,000 deductible provided for in the 1990-91 policy and entered judgment of $1,129,029 for PECO against the 1990-91 Underwriters. The Underwriters then moved to amend or correct the judgment and/or for a new trial or a judgment as a matter of law. The district court denied these motions and the Underwriters timely appealed.[1]

---

[1]The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. section 1332. This court has appellate

A federal court must apply the choice of law rules of the forum state when it is sitting in diversity. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941).  Pennsylvania law provides that "the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied." <u>In re Complaint of Bankers Trust Co.</u>, 752 F.2d 874, 882 (3d Cir. 1984).  PECO and the Underwriters executed the insurance contracts at issue in this case in Pennsylvania and the oil which DSI stole was transported within Pennsylvania.  Additionally, the policies contain a choice of law clause designating Pennsylvania law as the law controlling any disputes which arise under the polices.  Therefore, the district court correctly concluded that Pennsylvania law applies to this case.

In Pennsylvania, interpreting an insurance contract is a question of law to be resolved by a court. <u>Vale Chemical Co. v. Hartford Acci. & Indem. Co.</u>, 490 A.2d 896, 899 n.4 (Pa.Super. 1985), <u>rev'd on other grounds</u>, 516 A.2d 684 (Pa. 1986).  We apply plenary review to legal determinations made by the district court.  <u>Louis W. Epstein Family Partnership v. KMart Corp.</u>, 13 F.3d 762, 765-766 (3d Cir. 1994).

On appeal, the Underwriters contend that:  (1) the series of thefts is not one occurrence; (2) if all of the thefts are one occurrence, the occurrence took place in 1984, when the

---

jurisdiction over the district court's final judgment under 28 U.S.C. section 1291.

5

Underwriters did not insure PECO; (3) a full deductible applies to each theft in which event the defendants would have no liability or alternatively a full deductible applies to each policy period which would reduce liability substantially; (4) the jury made mathematical errors in calculating PECO's damages; (5) the district court erred in awarding damages to PECO for oil stolen after March 1988 because PECO failed to take reasonable measures to stop DSI stealing after having been warned of DSI thefts; and (6) the district court abused its discretion by admitting certain testimony into evidence.

### III.

The threshold question on appeal is whether the multitude of thefts over the six-year period constituted a single occurrence. In a careful and exhaustive opinion denying the Underwriters' post-trial motions, the district court held that the thefts in this case constituted a single occurrence. Whether the losses here constituted one occurrence or amounted to a number of occurrences, as contended by the Underwriters, can have a significant impact on the amount of the liability, if any. Unfortunately, the policies do not provide a relevant definition of occurrence.[2] If each theft amounted to an occurrence, then each became subject to the deductible provisions of the policy. If, however, all of the thefts constituted a single occurrence,

---

[2]The first two polices do state that an occurrence is "any one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event." However, this definition only applied to additional building construction risks, not the entire policy.

then the deductible provision of the policy surfaced only once. We therefore look to other sources for assistance in defining this term. To determine "whether bodily injury or property damage is the result of one occurrence or multiple occurrences, the majority of courts have looked to the cause or causes of the bodily injury or property damage . . . ." B.R. Ostrager & T.R. Newman, Handbook on Insurance Coverage Disputes § 9.02 (7th ed. 1994) (internal quotation, emphasis and brackets omitted).

In Appalachian Ins. Co. v. Liberty Mut. Ins. Co., we held that "an occurrence is determined by the cause or causes of the resulting injury" and noted that a court should determine "if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." 676 F.2d 56, 61 (3d Cir. 1982) (citations and internal quotation omitted). If there is only one cause for all of the losses, they are part of a single occurrence. Id.; see also Armotek Industries, Inc. v. Employers Ins. of Wausau, 952 F.2d 756, 762 (3d Cir. 1991) (policy defined "occurrence" as "`an accident, including continuous or repeated exposure to conditions, which results in . . . property damage . . ..'"); Business Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361 (10th Cir. 1984) (series of forty acts of forgery by dishonest employee are deemed a single occurrence).

The jury found that DSI instituted its scheme to steal from PECO in 1984 and continued stealing from PECO until it discovered the thefts in 1990. The jury also found that each theft was a part of a larger scheme and that the scheme to steal

7

was the proximate cause of each theft.  We therefore hold that when a scheme to steal property is the proximate and continuing cause of a series or combination of thefts, the losses for liability insurance purposes constitute part of a single occurrence.  Accordingly, the district court committed no error in concluding that numerous thefts by DSI amount to one occurrence.

B.

The district court concluded that the policies in this case were "occurrence" policies.  "An occurrence policy provides coverage for any 'occurrence' which takes place during the policy period.  Under this type of policy, it is irrelevant whether the resulting claim is brought against the insured during or after the policy period, as long as the injury-causing event happens during the policy period."  B. Ostrager & T.R. Newman § 8.03(a). See Gereboff v. Home Indemnity Co., 383 A.2d 1024, 1026 n.1 (R.I. 1978), quoting 7A Appleman, Insurance Law and Practice § 4504.3 at 104-15 (Cum. Supp. 1974).  The district court therefore followed this court's holding in Appalachian, 676 F.2d at 61-62, and held that "the occurrence took place on November 21, 1990," the date the jury found that PECO first knew of the thefts.  The court accordingly ruled that the 1990-91 policy bore the liability subject to a single $100,000 deduction.

The policies in this case, however, insured "[a]gainst all risks of physical losses or damage however caused." (emphasis added).  Thus, the policies in this case are "all risks" policies, not "occurrence" policies, and provided coverage for

8

all losses which took place during the policy period. <u>See e.g.</u>
<u>Intermetal Mexicana, S.A. v. Insurance Co. of N. America</u>, 866
F.2d 71, 74-75 (3d Cir. 1989); <u>Rorer Group v. Insurance Co. of</u>
<u>North America</u>, 655 A.2d 123, 124 (Pa.Super. 1995).[3]

This court need not consider the Underwriters'
contention that the district court erred by holding that the
occurrence at issue in this case took place in 1990, because the
date of the occurrence is irrelevant.  Under an all risks
insurance policy, the Underwriters are liable for all losses
which PECO suffered during the relevant policy periods,
regardless of when the occurrence which triggered those losses
took place.  Thus, the district court erred in placing the total
liability for all of PECO's losses on the 1990-91 underwriters.

C.

The jury calculated PECO's losses during each policy
period.  The Underwriters are liable for those losses minus the
appropriate deductible.  The district court correctly applied a
single deductible to PECO's total loss.  However, the court
applied the deductible against the full liability it imposed for
all of PECO's losses on the 1990-91 Underwriters.  The policies
divide liability on an annual basis because of their "all risks"
language, but they call for one deductible per occurrence.  We

---

[3]"Under Pennsylvania law, when language in an insurance policy is
clear and unambiguous, a court must give effect to that
language." <u>Armotek Indus.</u>, 952 F.2d at 762 (<u>citing</u> <u>Northern</u>
<u>Insurance Co. v. Aardvark Associates</u>, 942 F.2d 189, 193 (3d Cir.
1991); <u>Gene and Harvey Builders, Inc. v. Pennsylvania Mfrs' Asso.</u>
<u>Ins. Co.</u>, 517 A.2d 910, 913 (Pa. 1986)).

agree with the district court and the jury that the entire scheme of thefts constituted a single occurrence.

On appeal, the Underwriters contend that a full deductible applies to each loss. Alternatively, they argue that a full deductible applies to each policy year. We reject these arguments because it would be inconsistent to break a single occurrence into multiple occurrences for the purpose of applying a deductible. The dissent, however, would aggregate six deductibles and arrive at a total of $520,000 for a single occurrence. The parties never contracted for such a result.

It seems to us that the most equitable and logical application of the policies' language to the realities of this case is to take the loss sustained by PECO each year and determine what percentage of the total insured loss it represents. We then apply the percentage thus derived to the deductible for each policy year and the resulting figure is deducted from the loss for that particular year. The Underwriters of each annual policy are thus liable for a percentage of PECO's total loss less that percentage of the stated policy deductible.

The jury found that the total loss suffered by PECO between November 1985 and December 31, 1990 was $1,229,029. They then allocated this loss on an annual basis and found that PECO lost: $142,218 in 1985-86; $371,287 in 1986-87; $202,561 in 1987-88; $235,008 in 1988-89; $241,933 in 1989-90; and $36,022 in 1990-91.

10

The percentage of the total losses sustained in each of the foregoing years respectively, commencing in November 1985, was:  11.6%, 30.2%, 16.5%, 19.1%, 19.7%, and 2.9%.  Applying this percentage to the deductible in each policy produces the following figures:  $2,320 for 1985–86;[4] $30,200 for 1986–87;[5] $16,500 for 1987–88; $19,100 for 1988–89; $19,700 for 1989–90; and $2,900 for 1990–91.

As a consequence, we concluded that the liability under the 1985–86 policy is $139,898 and the liabilities under the succeeding policies are $341,087 for 1986–87; $186,061 for 1987–88; $215,908 for 1988–89; $222,233 for 1989–90; $33,122 for 1990–91.

These calculations equitably provide each group of Underwriters with a deductible based on a single occurrence, as the policies provide.

D.

The Underwriters next argue that the jury reached its verdict through a strict mathematical formula and that it erred in calculating that formula.  The district court refused to disturb the jury's damage award because it was not shockingly excessive.  The court noted that PECO presented three different damage calculation methods and that the jury's verdict was

---

[4]The deductible for 1985–86 is $20,000.  See p. 3, supra, for its specific terms.  PECO demonstrated that it shipped $2,331,442 worth of fuel in 1985–86.  1% of this amount equals $23,314 which exceeds $20,000.  Therefore, this court will use a $20,000 deductible to calculate the liability of the underwriters for the 1985–86 policy.
[5]This policy and the remaining policies provide for a $100,000 deductible.

11

reasonable in light of the evidence submitted at trial.  We agree.

The Underwriters concede that courts normally use the shockingly excessive standard to review jury verdicts, but argue that courts should review the calculation methods of a jury in cases which are "susceptible to mathematical formula." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979).  The Underwriters state the law correctly, but it does not apply to this case.  In the special interrogatories submitted by the court, the jury found that PECO suffered losses of $1,229,029.  PECO presented three measures of loss ranging from approximately 9.1% of DSI's deliveries to 20%.  The jury concluded that PECO had lost $1,229,029.  This is equal to 6.1% of the oil delivered by DSI, but the Underwriters do not show that the jury arrived at this damage figure through a strict mathematical calculation or that it misapplied a mathematical formula in determining the amount of loss.  The district court did not err in refusing to review the jury's damage calculations, except for excessiveness, and in concluding that the award in this case was not excessive.

E.

The Underwriters also argue that the district court erred in awarding damages to PECO for oil stolen after March, 1988.  They contend that PECO's failure to discover DSI's thefts after that date was a violation of PECO's obligation under the insurance policy to avert or minimize loss.

12

This court has predicted that Pennsylvania will adopt the Restatement of Contracts' requirement that an insured must prove that losses were fortuitous before it can recover under an all risks insurance policy.  Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am., 724 F.2d 369, 372 (3d Cir. 1983).  The restatement defines a fortuitous event as:

> an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; . . . provided that the fact is unknown to the parties.

Id. (quoting Restatement of Contracts § 291 comment a (1932)) (emphasis in original); accord Intermetal Mexicana, 866 F.2d at 77.

The jury found that PECO had no actual knowledge of DSI's thefts prior to November, 1990 but should have known of the thefts as of March, 1988.  The Underwriters argue that PECO had constructive knowledge of DSI's thefts after March 1988 and that the losses after that date were not fortuitous.  Proving fortuity is not particularly difficult.  Intermetal Mexicana, 866 F.2d at 77.  A party must only show that a loss was unplanned and unintentional.  See Peters Township School Dist. v. Hartford Acci. and Indem. Co., 833 F.2d 32, 37 (3d Cir. 1987).  The Underwriters simply do not present any law which suggests that risks about which a party should have known are not fortuitous.

The Underwriters essentially argue that PECO was negligent in not discovering DSI's thefts.  Both parties agree that the policies in this case are "all risks" cargo transit

13

insurance.  At trial, citing Commodities Reserve Co. v. St. Paul
Fire & Marine Ins. Co., 879 F.2d 640, 642 (9th Cir. 1989), the
Underwriters agreed that they would be liable for any losses if
the policies provided coverage for the proximate cause of those
losses, even if the losses were precipitated by a combination of
causes.  Thus, the jury's determination that the DSI thefts were
the proximate cause of PECO's losses renders the negligence
element of the Underwriters' argument irrelevant.  Therefore, the
district court properly ruled that PECO was not legally barred
from recovering damages for losses after March, 1988.

F.

Lastly, the Underwriters maintain that the district
court abused its discretion by admitting certain testimony into
evidence.  At trial a PECO investigator, Ed Chiu, testified to a
conversation between him and Bill Joyce, a DSI driver.[6]  Chiu
testified that Joyce told him that the owner of DSI instructed
Joyce to steal from PECO.  PECO used this evidence to show that
DSI implemented a long-term scheme to steal from PECO.  The
Underwriters contend that the admission of this statement was
prejudicial error.

This court reviews district court decisions regarding
the admission of evidence for an abuse of discretion.  In re
Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990).  We find
no abuse of discretion here.

---

[6]At trial, Joyce asserted his Fifth Amendment privilege and
refused to testify.  The district court therefore found that he
was "unavailable" as a witness.  See Fed. R. Evid. 804(a)(1).  The
underwriters do not contest this finding.

14

> Chiu testified that:
> Mr. Joyce informed me that he was told by
> [DSI owner] Danny Jackson to steal on
> approximately 75% of the deliveries and he
> was supposed to steal for between three and
> five minutes.

The district court admitted this evidence as a statement against interest under Rule 804(b)(3), Fed. R. Evid.[7] The Underwriters argue that this statement is not a statement against Joyce's interest and thus does not fall within the exception. A person's admission that he stole for someone else is as much against his interest as an admission that he stole for himself. It subjects him to possible criminal responsibility and civil liability. The district court did not abuse its discretion by concluding that Joyce's statement was against his interest and admitting Chiu's testimony pertaining to Joyce's statement.

### III.

Summarizing, we reject the Underwriters' claims that the district court misapplied the law or abused its discretion in refusing to reduce the jury's award, in allowing damages after the date when PECO should have known of the thefts and in the

---

[7]The rule provides that:

> A statement which was at the time of its
> making so far contrary to the declarant's
> pecuniary or proprietary interest, or so far
> tended to subject the declarant to civil or
> criminal liability, or to render invalid a
> claim by the declarant against another, that
> a reasonable person in the declarant's
> position would not have made the statement
> unless believing it to be true [are not
> excluded by the hearsay rule if the declarant
> is unavailable as a witness].

15

admission of the Chiu testimony. The court also concluded correctly that the multitude of thefts constituted a single occurrence. We hold, however, that when a group of underwriters or insurers write all risks insurance against property losses which take place during a policy term, the insurers are liable for those losses sustained during the policy period. Further, we hold that when multiple policies provide for one deductible per occurrence, the appropriate and equitable manner of treating the deductible under such circumstances is to calculate the percentage of the loss sustained in each policy year to the total loss to ascertain the deductible for that particular year.

Accordingly, the judgment of the district court will be vacated and the case remanded with directions to enter judgment in favor of PECO and against the appellants consistent with this opinion.

Each side to bear its own costs.

STAPLETON, Circuit Judge, dissenting in part.

The court reads the policies in a way that make the extent of each syndicate's liability depend on the insured's loss experience before and after the period covered by its policy. Because I believe this clearly was not intended by the parties, I respectfully dissent.

I agree with the court that the syndicate of underwriters that issued each particular policy should be held liable for the harms that PECO suffered during the period that the policy was in effect. The court and I part company on our reading of the deductible clauses, however. I would hold that PECO's recovery during each policy period should be offset by the full amount of the deductible stated in the policy to be applicable to losses during the policy period arising out of any one occurrence.

Under each policy, a certain amount -- $20,000 or $100,000 -- must be deducted "from the amount of each loss or combination of losses arising out of any one occurrence." (See, e.g., app. III at E-252.) Put another way, each policy requires that the amount recoverable for losses suffered during the policy year must be reduced by the total deductible for each "occurrence" which led to the losses. For me, these policy provisions preclude the court's conclusion that only one

17

deductible is applicable to the losses incurred over the six-year period.

Suppose, for example, that PECO for some reason had decided to sue only the syndicate that had issued the policy covering PECO's losses between November 1989 and October 1990. PECO suffered losses of $241,933 for that time period and the 1989-1990 syndicate accordingly would be liable to pay that amount minus the applicable deductible. To calculate the deductible, the court would be faced with the simple question: are the losses here due to one occurrence or are they due to more than one occurrence? As the court cogently explains, the covered losses in each policy period had one cause -- the trucking firm's single scheme pursuant to which the drivers were instructed to continually syphon in the same manner -- and accordingly are all due to one occurrence. In my view, the court in this hypothetical case would be required to deduct a single deductible of $100,000 from the total amount of PECO's losses, producing a judgment of $141,933.

I would apply a similar analysis if PECO then decided to sue the syndicate that insured its losses for the 1985 to 1986 time period or any other year-long time period. In that second case, PECO would be entitled to recover the losses it suffered during the covered year-long time period, minus the applicable deductible. To calculate the deductible, the court again would have to decide that the losses for the particular year all had one cause and that there accordingly was only one occurrence. For the 1986 to 1987 period, for example, the court would subtract

18

the $100,000 deductible from PECO's losses of $371,287 to yield a judgment of $271,287.

This same analysis would govern how the court should calculate the amount of PECO's recovery if it decided to sue each of the six syndicates in six separate cases. The only difference here is that rather than suing each syndicate separately, PECO decided to sue the syndicates together in one case. That all of the syndicates are together here as defendants should not change the above analysis, however, nor should it affect the amount of each syndicate's liability. Thus, in my view, each syndicate's liability should be reduced by the deductible applicable to that policy period.

Following the court's approach, however, the syndicate sued in the first case would be entitled to a reduction of liability for only a certain fraction of the deductible bargained for and that fraction would depend on the total losses PECO suffered during periods both before and after the 1989–1990 policy period. This result would follow regardless of whether PECO decided to sue the other five syndicates in subsequent suits. The end effect of this is that the 1989–1990 syndicate's liability would be increased to reflect harms PECO suffered during periods not covered by the policy period; that is, the syndicate's liability would depend on losses PECO suffered during periods which the syndicate never agreed to insure.

This cannot be what the parties intended. In my view, each syndicate contracted for a deductible from covered losses which took place during the policy period, and each is entitled

19

to one.  Thus, I would instruct the district court to deduct the full amount of the deductible for each policy period.