[No. B091698. Second Dist., Div. Four. June 25, 1996.]

B.H.D., INC., Plaintiff and Appellant, v.
NIPPON INSURANCE COMPANY OF EUROPE, LTD., Defendant and
Respondent.

## Counsel

LaTorraca & Goettsch, Raymond H. Goettsch, Maxim Vaynerov and Andres C. Hurwitz for Plaintiff and Appellant.

Mendes & Mount, Donald K. Fitzpatrick, Mark S. Facer and David A. Robinson for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—The deductible endorsement of a casualty policy provides that "each claim for loss or damages (separately occurring) . . . shall be adjusted separately and from the amount of each adjusted claim or the applicable limit of liability, whichever is less, the sum of $10,000 shall be deducted." A person posing as a customer stole items of jewelry from the insured during each of many visits over a three-month period. The aggregate amount of the thefts exceeded the $10,000 deductible limit, but that limit was not exceeded by the theft on any one occasion. There was no extrinsic evidence with respect to the meaning of the policy terms. The trial court held that the deductible was not exceeded and, therefore, the insurer was not liable to the insured. We hold the trial court reached the correct conclusion, and affirm.

### FACTUAL AND PROCEDURAL SUMMARY

This case reaches us from a judgment following the grant of a full summary judgment motion in favor of the respondent. The facts are not disputed; in fact, the factual material in the moving papers was principally based upon declarations filed by appellant in its own motion for summary judgment. They may be briefly recounted.

Appellant, B.H.D. Inc., is a California corporation owned by Benjamin and Hanna Shlomi. It is engaged in the wholesale jewelry business, and operates out of a secured facility in Los Angeles. The business was insured against theft and certain other casualty loss under a "jewelers block policy" by Nippon Insurance Company of Europe, Ltd., the respondent.

The policy insured appellant's stock up to $1,250,000. It carried the following deductible endorsement:

"IN CONSIDERATION of the reduced premium charged, each claim for loss or damage (separately occurring), except as hereinafter provided, shall be adjusted separately and from the amount of each adjusted claim or the applicable limit of liability, whichever is less, the sum of $10,000 shall be deducted.

"This deductible shall not apply to loss or damage caused by fire or lightning at the premises of the Assured as referred to in this Policy.

"It is a condition of this Policy that the deductible specified above of $10,000 shall be solely at the risk of the Assured, and shall not be covered under any other policy of insurance effected in the name of the Assured.

"In the event of any recovery or salvage on a loss which has been or is being or is about to be paid hereunder, such recovery or salvage shall accrue entirely to the benefit of the Underwriters under this Policy until the sum paid by them has been made up."

Visitors and customers of B.H.D. are admitted through a security door, activated by a button from inside the premises. Surveillance cameras are in operation, and the videotapes are changed daily. Merchandise is maintained behind glass showcases, accessible only from behind the cases. Gold chains are secured by leather straps on separate trays. The firm's procedure in displaying merchandise to customers restricts the amount shown at any particular time. Trays containing merchandise are brought out one by one for the customer's viewing and selection. Gold chains are sold by weight, and scales are located at each work station for that purpose.

In April 1992 a person representing herself to be Rosa Martinez and a buyer for Mexican-based jewelry stores entered the premises and purchased gold jewelry. She visited the premises about two to three times a week, every week until early July 1992. She always paid for her purchases in cash. Eventually, the Shlomis noticed that their inventory was dropping beyond the amount that might be expected by sales of merchandise.

On or about July 2, 1992, the person identifying herself as Rosa Martinez visited the premises and asked for certain types of gold charms that B.H.D. did not have in stock. She was informed that the merchandise could be obtained the next day. She returned the next day and purchased some of the charms, which had arrived. After she left, Mrs. Shlomi noticed that more pieces were missing than "Martinez" had purchased. No other customer had purchased any of the charms, and the Shlomis suspected "Martinez" of theft. They viewed the surveillance tapes for the previous week or more and noticed that "Martinez" dropped merchandise into her purse when the attention of the salesperson was distracted. When "Martinez" returned to the B.H.D. premises on July 6, 1992, to pick up a special order, police were contacted and she was arrested. Mr. Shlomi was informed by police officers that she posted the $5,000 bail and was released, and (not surprisingly) had not been heard from since.

The Shlomis then conducted an inventory to determine their loss. A representative of the insurer also examined their records. It was established

that "Martinez" had stolen merchandise valued at about $117,280 during the course of her many visits to the premises. The Shlomis presented a single claim for that amount.

In response to a request for admission propounded by respondent, appellant admitted that it did not suffer a loss from theft of more than $10,000 on its property insured under the policy on any one day during the policy period.

Respondent ultimately denied the claim, and B.H.D. initiated the present litigation. Both sides sought summary judgment. The trial court granted respondent's motion and rendered its judgment in favor of respondent, from which appellant appeals.

## DISCUSSION

Since no extrinsic evidence was offered with respect to the meaning of the deductible clause, the issue before us is one of contract interpretation. Appellant invokes the rule, announced in several older cases, that an insurance policy is to be construed to provide indemnity for loss "if semantically possible." (See *Beaumont-Gribin-Von Dyl Management Co.* v. *California Union Ins. Co.* (1976) 63 Cal.App.3d 617, 623 [134 Cal.Rptr. 25], cited by appellants.) That is no longer the law. The present rule was announced in *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253], and repeated in several later cases. It is summarized in *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048]: " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' . . . . 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.)' . . . . 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' . . . . 'If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)' . . . . Moreover, if the policy terms are ' "used by the parties in a technical sense or a special meaning is given to them by usage," ' this use or meaning 'controls judicial interpretation.' . . . ." (Citations omitted.)

With substantial reliance on the former rule that all semantic doubts about coverage must be resolved in favor of the insured, appellant argues that the $10,000 deductible should be applied to the aggregated amount of the loss, since all the thefts were of the same kind, committed in the same way by the same person, and all were submitted on a single claim. Appellant points out that the term "claim" is not defined in the deductible endorsement or in the policy.

We do not find that contention to be tenable. While the thefts were similar, each was a completed crime that would have supported a separate count in a criminal proceeding and separate punishment. (See *People* v. *Stanford* (1940) 16 Cal.2d 247, 251 [105 P.2d 969].) This is not a case in which the thief had a general overall plan to steal a particular item or amount, or where he or she took advantage of a position of trust to embezzle an aggregate amount over an extended period. (Cf. *People* v. *Slocum* (1975) 52 Cal.App.3d 867, 889 [125 Cal.Rptr. 442].) "Martinez" clearly intended to steal jewelry from appellant, but each time she entered its store, purloined items displayed to her while the salespersons' attention was distracted, and left the premises with the stolen merchandise, she completed a separate crime.

The fact that appellant submitted its claim in a single claims document cannot affect the result. If it could, appellant could have defeated the effect of the deductible provision by submitting any number of otherwise unrelated losses on a single claims document. Nevertheless, if the policy provision had omitted the parenthetical provision, "separately occurring," an ambiguity would have appeared that would have lent itself to an argument in favor of the construction urged by appellant.

But the "separately occurring" phrase was included. In context, it can only mean that the deductible applied to each "separately occurring" loss. While the noun form of "occurring," that is "occurrence," is not specifically defined in the policy, its plain reference is to each separate covered loss. If a thief takes several items on a single occasion, there is one occurrence. If a thief commits larceny on each of several successive days, there are many occurrences. The effect of the parenthesis is to import the meaning, "which is," so that the provision is read to mean that "each claim for loss or damages which is separately occurring, . . . shall be adjusted separately . . . ." The result is that the deductible applies to each theft that occurs on a separate occasion.

Any other construction would drain the term of meaning or lead to absurdity. The cases cited by appellant for a different result are distinguishable. Some involve claims brought about by the same act of the insured (*American Home Assurance Co.* v. *Dykema* (7th Cir. 1987) 811 F.2d 1077, 1083), or claims of loss flowing from a single policy decision adopted by, or a cause brought about by, the insured. (See *Appalachian Ins. Co.* v. *Liberty Mutual Ins. Co.* (3d Cir. 1982) 676 F.2d 56) [employment discrimination]; *Cargill, Inc.* v. *Liberty Mutual Ins. Co.* (8th Cir. 1980) 621 F.2d 275 [use of formula which caused property damage].) Others turn on a particular definition of "occurrence" in the policy. (See *Champion Intern. Corp.* v. *Continental Cas. Co.* (2d Cir. 1976) 546 F.2d 502, 505 [policy provided that all

property damage arising out of continuous or repeated exposure to substantially same conditions deemed arising from single occurrence]; *Uniroyal, Inc.* v. *Home Ins. Co.* (E.D.N.Y. 1988) 707 F.Supp. 1368, 1379 [similar]; *Transport Ins. Co.* v. *Lee Way Motor Freight* (N.D.Tex. 1980) 487 F.Supp. 1325, 1329 [similar].) *Maurice Pincoffs Co.* v. *St. Paul Fire & Marine Ins. Co.* (5th Cir. 1971) 447 F.2d 204, 206, cited by appellant, is a case involving sale of contaminated bird seed. In that case the court ruled that each sale constituted a *separate* occurrence. It did not find multiple occurrences, as appellant states.

Finally, we consider *Eott Energy Corp.* v. *Storebrand International Insurance Co.* (1996) 45 Cal.App.4th 565 [52 Cal.Rptr.2d 894], a case decided last month by our colleagues in Division Three. In *Eott*, there was evidence that a petroleum supplier had suffered "a planned and orchestrated theft" of its products as a result of a conspiracy, spanning a substantial period of time. The conspirators temporarily disabled Eott's fuel meters so that fuel was pumped into trucks and was not recorded on the meters and therefore not billed to customers. This happened on 653 occasions over an 11-month period. Eott had a policy that covered loss by theft subject to a $100,000 deductible for each "occurrence," a term that was not defined. The insurance carrier denied liability on the theory that there were 653 occurrences, none of which resulted in a loss over $100,000. The policy provided that "*all claims* for loss, damage or expense arising out of any one occurrence . . . shall be adjusted as one claim, . . ." (45 Cal.App.4th at p. 575, original italics.) The court relied on this language and the decision of the federal Third Circuit in a very similar case, *PECO Energy Co.* v. *Boden* (3d Cir. 1995) 64 F.3d 852, 856, in holding that if the insured "can establish that there was a systematic and organized scheme to steal its diesel fuel products and that such scheme was the proximate cause of its $1.5 million loss, then there would only be a single occurrence subject to a single deductible of $100,000." (45 Cal.App.4th at p. 578.)

There was no evidence in this case of a conspiracy or a systematic and organized scheme, as there was in *Eott*. Indeed, in oral argument counsel for appellant made the point that it is undisputed that only one person was involved in the commission of the thefts. The central distinction, however, is the difference in the policy language. Rather than a provision that suggests aggregation of all thefts into a single claim ("all claims . . . arising out of any one occurrence . . . shall be adjusted as one claim"), the policy in this case specifically applied the deductible to each loss "separately occurring." There was no comparable provision in *Eott*, or the cases it cites. As we have discussed, we would have to read that phrase out of the policy to reach the conclusion urged by appellant. That we are unable to do.

We conclude that the plain meaning of the deductibility clause is to apply the $10,000 deductible to each completed theft. Since no theft resulted in a loss greater than that sum, respondent was not liable on the claim made by appellant. The trial court correctly resolved the issue in that manner.

DISPOSITION

The judgment is affirmed.

Hastings, J., and Baron, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1996.