**LEXINGTON INSURANCE COMPANY; Houston Casualty Company, Plaintiffs–Counter–Defendants–Appellants,**

v.

**TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Defendant–Appellee,**

Commonwealth Insurance Company, Reliance National Insurance Company, Hartford Fire Insurance Company, American International Specialty Lines Insurance Company, Defendants–Counter–Claimants–Appellees.

No. 00–15407.

D.C. No. CV–98–03477 CRB/JCS.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 16, 2001.*
Decided Sept. 11, 2001.

Before WOOD,** KOZINSKI, and O'SCANNLAIN, Circuit Judges.

MEMORANDUM ***

This case arises from a dispute between Lexington Insurance Company and Hous-

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R.App. P. 34(a)(2).

** Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the

ton Casualty Company ("the primary insurers" or "plaintiffs") and Commonwealth Insurance Company, Travelers Indemnity Company of Illinois, Reliance Insurance Company of Illinois, Hartford Fire Insurance Company, and American International Specialty Lines Insurance Company ("the excess insurers" or "defendants"), concerning coverage of a claim for the arson of four different Contra Costa County courthouses in California. The primary insurers contend that all four fires constitute a single occurrence under the property insurance policy, while the excess insurers assert that each fire represented a separate occurrence. The district court agreed with the excess insurers and granted their cross-motion for summary judgment. The primary insurers appeal the judgment. We have jurisdiction under 28 U.S.C. § 1291 (2000), and we affirm the decision of the district court.

## I. BACKGROUND

The property loss in this case resulted from arson fires at four different courthouses in Contra Costa County ("the County"). The first fire occurred on August 28, 1995 at the Walnut Creek Municipal Court in Walnut Creek. The other three fires occurred seventeen days later on September 14, 1995. The first of the September 14th fires occurred at the Traffic and Small Claims Court in Concord. The second fire occurred six minutes later at the nearby Mount Diablo Municipal Court in Concord. The final fire was ignited less than one hour later at the Contra Costa Superior Court located in Martinez. The fires were individually started by Richard Dudley Stevens, who had apparently suffered several adverse rulings in all of the courthouses involved. Stevens was charged and convicted on separate counts of arson.

The County was insured for the damage sustained by the courthouses under policies issued by the primary and excess insurers to the County Supervisors Association Committee ("CSAC") and its members. CSAC is an association of California-based local government entities which, among other things, obtains property insurance for its members. Under the CSAC insurance program, the primary insurers are responsible for coverage up to $5 million for any one occurrence, while the excess insurers provide coverage of $10 million for losses which exceed the primary limit of $5 million per occurrence. Also under the program, the County was required to pay a $50,000 deductible per occurrence. As a result of the fires, the County suffered property damage in excess of $14 million. Only the Contra Costa Superior Court fire, causing damage of approximately $7.6 million, individually exceeded the primary policy limit.

The policies of the primary and excess insurers are virtually identical in terms of the scope of the coverage. Neither policy defines the term "occurrence." The policies do contain the following provisions:

Deductible Provision:

All claims for loss arising out of a single occurrence, shall be adjusted as one claim, and from the amount of each such claim, a single deductible shall apply to the total of the adjusted claims resulting from the single occurrence.

\*      \*      \*      \*      \*      \*

Loss:

Means the loss by any peril or combination of perils insured against arising out of a single occurrence. When the term applies to loss or losses from earthquake, flood, and/or windstorm, it shall be held to include those losses occurring

courts of this circuit except as provided by

Ninth Circuit Rule 36–3.

or commencing during the period of 72 consecutive hours.

\* \* \* \* \* \*

Reinstatement:

Any reduction in the amount insured hereunder due to payment of any loss or losses shall be automatically reinstated for the balance of the term of this contract.

\* \* \* \* \* \*

Limit of Liability:

The limit of liability as stated below is per occurrence and in the aggregate as respects the peril of earthquake and also in the aggregate as respects the peril of flood. The provisions of the reinstatement clause as stated elsewhere herein are null and void as respects the perils of earthquake and flood.

All of the plaintiffs and defendants accepted coverage for the property damage caused by the fires and entered into a loss funding agreement. The agreement adjusted the losses and compensated the County for the damages sustained as a result of the fires. During the loss adjustment, a dispute arose between the primary and excess insurers regarding the number of occurrences applicable to the courthouse fires. The primary insurers contend that where a common scheme to destroy property exists, there is only a single occurrence of property damage, regardless of how many separate events or crimes actually cause the damage. The primary insurers claim that because Stevens was convicted of starting all four fires, there was a systematic and organized scheme that constitutes one occurrence and one deductible,

resulting in the payment of only one $5 million policy limit.

The excess insurers disagree. They contend that, under the language of the policies and the parties' clear intent, each separate fire, in each separate building, at each separate time, is a separate occurrence.

The primary insurers filed their complaint for declaratory relief against the excess insurers in California state court. However, pursuant to 28 U.S.C. § 1441(b) (2000),[1] the excess insurers had the case removed to federal district court under diversity jurisdiction. Once in district court, the parties filed cross-motions for summary judgment. The district court granted the excess insurers's motion and held that each individual fire constituted a separate occurrence. The primary insurers filed this timely appeal.

Plaintiffs maintain that the four fires were caused by Stevens' common scheme or plan and therefore, under *EOTT Energy Corp. v. Storebrand International Insurance Co.*, 45 Cal.App.4th 565, 52 Cal. Rptr.2d 894 (Cal.Ct.App.1996), the four fires constitute a single occurrence. Defendants argue that under *EOTT* and *B.H.D., Inc. v. Nippon Insurance Co.*, 46 Cal.App.4th 1137, 54 Cal.Rptr.2d 272 (Cal. Ct.App.1996), each fire constitutes a separate occurrence.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). We also review a trial

---

**1.** Section 1441(b) provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

court's interpretation of an insurance contract *de novo. See Stanford Ranch, Inc. v. Md. Cas. Co.,* 89 F.3d 618, 624 (9ᵗʰ Cir. 1996).

## ANALYSIS

■■■ This is a diversity case and both parties agree that California law controls. The parties do not dispute the relevant facts. The single issue before us is one of contract interpretation, which is an issue of law. *See EOTT,* 52 Cal.Rptr.2d at 898. "[I]t is the duty of the trial court to determine the issue of law." *Id.* (citation omitted).

■■■ "The principles which govern the interpretation of insurance contracts are both familiar and well settled." *EOTT,* 52 Cal.Rptr.2d at 899. Under California law, the intent of the parties determines the meaning of the contract. Cal. Civil Code §§ 1636, 1638 (West 1985). The parties' intent is inferred, if possible, from the written provisions of the contract. *Id.* § 1639. The meaning of the provisions must be interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Id.* § 1644. "It is not permissible to impute an unusual meaning to language used in [an insurance contract]." *Certain Underwriters at Lloyds v. Engs Motor Truck Co.,* 135 Cal.App.3d 831, 185 Cal.Rptr. 613, 614 (Cal.Ct.App.1982). "A written contract must be read as a whole and every part interpreted with reference to the whole." *Shakey's Inc. v. Covalt,* 704 F.2d 426, 434 (9ᵗʰ Cir.1983). "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id.* "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Int'l Union of Bricklayers & Allied Craftsman Local No.*

*20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1406 (9ᵗʰ Cir.1985).

In *EOTT,* as here, the court was asked to determine if there was a single occurrence or multiple occurrences as to insurance coverage. EOTT suffered a $1.5 million loss as the result of over 650 thefts of diesel fuel from a petroleum processing plant over eleven months. 52 Cal.Rptr.2d at 896–97. EOTT argued that the thefts were part of a conspiracy and therefore constituted a single occurrence subject to a single deductible. *Id.* Storebrand contended that each theft was a separate occurrence, and because no one theft had exceeded that $100,000 deductible, Storebrand, as the insurer, was not liable. *Id.* at 896. The trial court held that the term "occurrence" was unambiguous and that each theft was a separate occurrence. *Id.* at 897. However, the appellate court reversed. Based on the language used in the deductible clause and finding that the term "occurrence" in the umbrella liability portion of EOTT's policy was defined to include "a continuous or repeated exposure to conditions," the appellate court determined that "the term 'occurrence' reasonably contemplates that multiple claims could, in at least some circumstances, be treated as a single occurrence or loss." *Id.* at 900.

The interpretation of what constitutes a single occurrence or multiple occurrences was also addressed in *B.H.D.,* where a person posing as a customer stole numerous pieces of jewelry from the insured jewelry store in three months. 54 Cal. Rptr.2d at 273–74. The store owners presented a claim for more than $117,000, based on the multiple thefts. *Id.* at 274. The deductible provision in *B.H.D.* provided that "each claim for loss or damages (separately occurring) … shall be adjusted separately and from the amount of each adjusted claim or the applicable limit of

liability, whichever is less, the sum of $10,000 shall be deducted." *Id.* at 272. The trial court found that the store owners never suffered a loss of more than $10,000 on any one occasion and never met the $10,000 deductible. Therefore, there was no liability on the part of the insurer. *Id.* at 272–73. The appellate court affirmed, holding that the language of the deductible provision meant that the deductible applied to each theft that occurred on a separate occasion. *Id.* at 274–75. The court in *B.H.D.* distinguished the holding in *EOTT* not only due to the specific language in B.H.D.'s policy, but also noted that "[t]here was no evidence in this case of a conspiracy or a systematic and organized scheme, as there was in *EOTT*." *Id.* at 275. The court also observed that while the thefts were similar, each one was a completed crime that would support a separate count and a separate punishment in a criminal proceeding. *Id.* at 274. As the court stated, "If a thief commits larceny on each of several successive days, there are many occurrences.... Any other construction would drain the term of meaning or lead to absurdity." *Id.* at 274–75.

■ We agree with the district court that four separate fires in four separate buildings at four separate locations constitute four separate occurrences for purposes of plaintiffs' liability and the policy deductible. *See H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 150 F.3d 526, 535 (5th Cir.1998) (holding that two sexual assaults on two different children by same employee in same store one week apart constituted two occurrences for insurance purposes); *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* 447 F.2d 204, 207 (5th Cir.1971) (noting that single occurrence provision applies where single fire caused liability for all damages; a second fire would be a second occurrence).

Facts similar to those of the instant case were presented as the basis for the holding in *Goose Creek Consolidated I.S.D. v. Continental Casualty Co.,* 658 S.W.2d 338, 339 (Tex.Ct.App.1983), where two fires occurred within approximately one hour and forty-five minutes at two schools several blocks apart. The insurer in *Goose Creek* argued that it should have been allowed to show that the damages arose from a single cause: an arsonist. *Id.* at 340. The court held that whether the two fires were caused by one individual or different individuals was "of no consequence.... [Who caused the fires] could have no bearing on the fact that two fires distinguishable in space and time occurred and that one did not cause the other.... [W]here there are two fires at two different places with two separate causal factors, there are two loss occurrences." *Id.* at 340–41.

Each fire set by the arsonist would and did support separate counts in a criminal proceeding. *See B.H.D.,* 54 Cal.Rptr.2d at 274. The deductible provision in this case, while identical to that in *EOTT,* contained an additional qualification not found in *EOTT.* The deductible provision stated that a single deductible applied to claims resulting from a single occurrence, with the reinstatement clause creating an exception only for earthquake and flood: According to the "72–hour provision," in the event of damages from either earthquake or flood, plaintiffs were allowed to aggregate losses within a 72–hour period as one occurrence.

Although plaintiffs argue that the arson fires should be considered a third exception, we cannot make this inference from the language of the contract. *See Pardee Constr. Co. v. Ins. Co. of the West,* 77 Cal.App.4th 1340, 92 Cal.Rptr.2d 443, 456 (Cal.Ct.App.2000) ("the insurers' failure to use available language expressly excluding [a specific type of] coverage implies a man-

ifested intent not to do so"); Cal. Civil Code §§ 1639, 1644 (West 1985). Plaintiffs' argument that they should be allowed to aggregate the arson fires as is possible with earthquake and flood would render the 72–hour provision superfluous; all the damage from the same earthquake or flood would constitute a single occurrence and the 72–hour provision would be unnecessary. The policy may not be interpreted in a manner that contradicts other provisions of the policy. *See B.H.D.*, 54 Cal. Rptr.2d at 275.

## CONCLUSION

For the above-stated reasons, we AFFIRM the district court's order granting summary judgment to defendants.